## JOHN KNEE *vs.* THE BALTIMORE CITY PASSENGER RY. CO.

*Right to Trial by Jury in Civil Actions—Payment of Costs.*

The constitutional right to trial by jury in civil cases is to be construed in connection with the common law history of the right.

This right is not infringed by reasonable regulations as to the mode in which or the condition upon which such trial may be had.

Code, Art. 75, sec. 68, provides that whenever a new trial shall be ordered by the Court of Appeals or by the trial Court, the latter Court shall have power to stay further proceedings until the costs then incurred shall be paid. *Held*, that this provision is not in violation of Constitution, Art. 15, sec. 6, securing a right to trial by jury of issues of fact, nor is it in violation of the Declaration of Rights, Art. 19, declaring that every man ought to have justice and right freely without sale.

Appeal from an order of the Superior Court of Baltimore City (RITCHIE, J.)

The cause was argued before McSHERRY, C. J., BRYAN, FOWLER, BRISCOE, ROBERTS, BOYD and PEARCE, JJ.

*S. S. Field* (with whom was *E. Swinney,* on the brief), for the appellant.

*Arthur W. Machen* and *Wm. S. Bryan, Jr.,* for the appellee.

PEARCE, J., delivered the opinion of the Court.

The appellant having been injured, as he alleged by the negligence of the appellee, brought suit in the Superior Court of Baltimore City, and obtained judgment for $800, which on appeal to this Court, was reversed with costs for error in the admission of testimony, and a new trial was awarded, the case being reported in 83 Md. page 77. Section 68 of Art. 75, of the Code of Public General Laws is as follows: " The Court in which an action shall be, after a

new trial has been ordered by the Court of Appeals or by that Court, shall have power to stay all further proceedings in such action, until all, or any of the costs, adjudged by the Court of Appeals, or by that Court, shall have been paid by the party adjudged to pay the same." After the case was remanded to the Superior Court, the appellee prayed an order requiring the appellant to pay the costs of the appeal, and of the former trial, amounting to $139.75, and directing that all further proceedings be stayed, until said costs should be paid. The Court passed such order, and from that order this appeal is taken. The exercise of the power thus conferred, being discretionary with the Court, no appeal would lie—if the validity of this provision of the Code were not drawn in question, but the appellant contends that this provision violates Art. 15, sec. 6 of the Constitution, which guarantees the right of trial by jury, of all issues of fact, as well as Art. 19 of the Declaration of Rights, which declares that every man, for any injury done him, in person or property, " ought to have justice and right, freely, without sale," and this contention we will now consider.

The first mention in the fundamental law of the State, of the right to trial by jury, is in Art. 5 of the Declaration of Rights, which says: " The inhabitants of Maryland are entitled to the common law of England, and the trial by jury, *according to the course of that law.*" Language of similar import, is found in the Constitution of each of the United States, and the authorities are therefore naturally uniform to the effect, that it is the historical trial by jury, as it existed when the Constitution of the State was first adopted, to which the inhabitants of each State are entitled; and whatever nature of regulations, or restrictions, of that right existed in practice at that day, it has ever since been lawful to maintain, and now is lawful to establish. The precise question here presented has never been decided in this State, but the decisions of this Court in analogous cases are we think. persuasive of the validity of the Act under

consideration.   The Constitution of Maryland provides: that no law shall be enacted authorizing private property to be taken for public use, without just compensation, as agreed upon between the parties, *or awarded by a jury*, being first paid, or tendered to the party entitled thereto; and in *Steuart* v. *Mayor and City Council*, 7 Md. 500, where that provision was considered, this Court held, that "as the law secures a trial by jury on appeal, it is no violation of a constitutional provision guarding that right, although such law may provide for a primary trial without the intervention of a jury.   This is upon the ground that the party, if he thinks proper, can have his case decided by a jury *before it is finally settled.*"   In such primary trial, costs are incurred which must abide the final result on appeal, and which to that extent constitutes an additional burden affixed to the right of trial by jury, but that does not afford a test of the validity of the Act.   In deciding the case in 7 Md., JUDGE ECCLESTON cites with approval the case of *Beers* v. *Beers*, 4 Conn. 535, where a provision of the Constitution guaranteeing right of trial by jury was held not to be violated, by an act giving jurisdiction to justices of the peace, but with an appeal; provided bond be given.   In that case, the Chief Justice said: "No such unreasonable hardship is put on the appellant by the bond required for the prosecution of the appeal, as to justify the assertion that the right of trial by jury is in any manner impaired   *   *   *.   It could never be the intention of the Constitution to tie up the hands of the Legislature, so that no regulation even, of the right of trial by jury could be made.   It is sufficient and within the reasonable intendment of that instrument, if the trial by jury be not impaired, although it may be subjected to new modes, *and even be rendered more expensive*, if the public interest demand such alteration."   In *Haney* v. *Marshall*, 9 Md. 209, it was objected that the Act of 1801, which required a plaintiff moving out of the State after the institution of suit, to give security for costs, was in violation of that provision of

the Constitution of the U. S., which secures to citizens of each State, all the privileges and immunities of citizens in the several States. The Court said, the Act had been recognized by the profession, both on the bench and at the bar, for half a century, as a valid law, its constitutionality never before having been questioned, and that they were not disposed to declare it a nullity; and in aid of that decision referred to the rules of the Circuit Court for the United States, for the District of Maryland, which adopted the principle of that Act. This was in 1856 and nearly another half century passed before the question was again raised, in *Holt* v. *Tenallytown R. R.*, 81 Md. 219; in the case of a non-resident, and upon the same ground, where JUDGE FOWLER, delivering the opinion, declared the Court to be equally unwilling at that day to interfere with its operation, by pronouncing it unconstitutional and void.

We have only been referred to one other Maryland case to sustain the Act in question and that will be mentioned hereafter, but there are numerous cases elsewhere, which afford strong support, some of which we will mention. In *Weston* v. *Withers*, 2 Term Rep. 511, a plaintiff who had been non-suited in an action of trespass for taking his goods, brought a second action for the same cause, and although he sued *in forma pauperis*, being a prisoner in the King's Bench, the Court made absolute a rule to stay proceedings, till the costs of the former action were paid. In *Perkins* v. *Hinman*, 19 Johnson, 228, plaintiff had been non-suited in an action on a promissory note, and brought a second action; and the Court adopted the rule of the Court of King's Bench and stayed proceedings till the costs of the former suit were paid. In *Robinson* v. *Merchants' & Miners' Transportation Co.*, 16 R. I. 217, the same rule was enforced, the Court saying that " the authorities showed *it is the practice at common law* for the higher Courts, where the plaintiff in a pending action, has been non-suited on the merits in a previous action, for the same cause, to stay proceedings till the costs of the former

are paid." In *Sooy* v. *McKean*, 9 N. J. L. 88, it is said,
"The stay of proceedings in a second action until the costs
of a former are paid, is founded on sound and just princi-
ples. The practice first fully obtained in the action of
ejectment. Its extension for a time, was questioned, but
the policy and propriety of extending it to other actions,
did not long remain a doubt. For a time also, it was
questioned whether the proceedings would be stayed, unless
in the first action, the merits had been examined, and de-
cided, either by non-suit, or verdict; but sound reason pre-
vailed over this difficulty." The rule was recognized in
Maryland at a nearly day in *Bull's Lessee* v. *Sheredine*, 1st
H. & J. 206, which was an action of ejectment.

This common law practice, ante-dating our Constitution
and Declaration of Rights, led naturally and almost inevit-
ably as the field of litigation widened to the enactment of
statutes, such as that now before us, having for their ob-
ject the just regulation of the right of trial by jury. Such
statutes from time to time have been assailed by the inde-
pendent and aggressive thinkers of the profession, and it is
gratifying to note with what sound and wise discimination,
in the main, the Courts have dealt with the subject, always
preserving unimpaired the ultimate historical right as it ex-
isted at the time of our separation from the mother country,
while sustaining all reasonable regulations of the exercise
of that right made in the interest of the general public.
Thus the payment of jury-fees, in States where such pay-
ment is required by statute, as a condition to a jury trial,
has been very vigorously attacked as affixing an unconstitu-
tional burden to this right, but the decisions have almost
uniformly sustained the statutes. It was so held in *Randall* v.
*Kehlor*, 60 Maine, 37, where the Act provided that the
party demanding a jury trial, shall pay the jury-fee, and
tax the same, in the costs, if he prevail, the Court saying:
"In cases tried before Justices of the Peace, the defendant
when unsuccessful and appealing, is required to advance
the jury-fee, and this has never been held an infringement

on his constitutional right to a trial by jury    The argument of inability to pay is alike applicable to the plaintiff as to the defendant, and the hardship is no greater on one, than on the other."    In the case at bar, the appellant declares that this statute " operates against plaintiffs only," but in this he is in error.    The language of the statute is applicable to either party who shall have been adjudged to pay the costs, and it may be invoked as well by a plaintiff, who has succeeded on appeal in reversing a judgment for the admission of improper evidence or misdirection of law, as by a defendant, who occupies the position of the appellee in this case.    To argue that it is or will be operative only against plaintiffs is to impute to trial Courts either an unconscious bias against plaintiffs or a lack of discretion in the exercise of the power conferred by the Act.    The principles which underlie this question have received careful consideration in two cases from Rhode Island, which we will cite.    In *Conley* v. *Woonsocket*, 11 R. I. 147, a statute requiring security for costs from resident as well as non-resident plaintiffs, was held no violation of the Constitution of that State, which is in substance identical in this regard with our own.    CHIEF JUSTICE DURFEE, speaking of the constitutional guaranty, said: " This provision is borrowed with some change from Magna Charta.    It did not have the effect in England to abolish fees in judicial proceedings. Neither has it been construed to have that effect in this State, still less can it have the effect to make unconstitutional, an Act which authorizes a Court for cause shown, to require security for costs of a party suing in the Court.    A person cannot be said to purchase justice, when he simply secures his opponent's costs, in case he fails in the suit." And in *Perce* v. *Hallett*, 13 R. I. 363, the same Judge held that this constitutional provision prohibits gratuities, or exactions, given or demanded to influence legal proceedings, but not moderate fees such as are prescribed by statute, and that this interpretation of the provision is drawn from its history.    There, the contention was that to

exact the jury-fee, was to sell justice, and the Judge'said
" The argument is cogent, and if we were at liberty to
regard simply the language of the provision, might be
convincing.    But it has a history which sheds light
on its meaning.    It was borrowed from Magna Charta,
and in England, the generality of jurists and legislators
have supposed and acted on the supposition, that it does
not prohibit such fees, but only the fines 'which were
anciently paid to expedite, or delay law proceedings, and
procure favor.    *Reeve's History of the English Law*, Fin-
lason's ed., vol 1, 284; *Thompson's Essay on Magna Charta*,
230.    The character of these fines is given by the Madox,
in the twelfth ch. of his history of the Exchequer, in which
he says, men used to pay fines to have or obtain justice
and right; others to have their right, or their proceedings,
or judgment speeded; others for stopping or delaying of
proceedings at law; and others were obliged to pay a fourth,
a third or a half part of the debt sued for, so that the King
seemed to sell justice and right to some, and to delay or
deny it to others."

Nowhere has this subject been more frequently and fully
considered than in our sister State of Pennsylvania.    In
*Biddle* v. *Commonwealth*, 13 S. & R. 405, in speaking of
the requirement of an oath by the appellant, that injustice
had been done him, and that his appeal was not for delay,
CH. J. TILGHMAN said: " Laws such as these promote justice,
and leave the substance of the trial by jury unimpaired.''
In *Warren* v. *Commonwealth*, 37 Pa. St. 45, the allowance
of four peremptory challenges to the commonwealth was
held not to be in conflict with the constitution, and JUSTICE
THOMPSON said: " The framers of the Constitution, in which
this right has been so sedulously guarded, knew and in-
tended that legislation must provide the forms under which
the right was to be enjoyed, and they meant no more than
that, it should be enjoyed under regulations, which should
not take away the right, deemed necessary to order itself."
So in *Haines* v. *Levin*, 51 Pa. St. 412.    The Act of 1772

gave jurisdiction between landlord and tenant to two Justices and a jury of free-holders, the judgment being final, and the Act of 1863 substituted one Justice, with an appeal to the Common Pleas, on giving bail to secure all costs accrued and to accrue; and JUDGE AGNEW said: "The great purpose of this provision of the Constitution was, not to contract the power to furnish modes of civil procedure in Courts of Justice, but to secure the right of trial by jury, in its accustomed form, before the rights of person or property shall be finally decided."

These principles have been adopted and announced very generally in other States. In *Couneau* v. *Geis*, 73 Cal. 176, it was held: "The refusal to pay the jury-fee, is the refusal to have a jury trial, and since this is the party's own act, he cannot be said to be deprived of anything." In *Adams* v. *Corriston*, 7 Minn. 456, it was said: "The Constitution does not guarantee to the citizen the right to litigate without expense, but simply protects him from the imposition of such terms as unreasonably or injuriously interfere with his right to a remedy in the law. To the same effect is the case of *Adac & Co.* v. *Zangs*, 41 Iowa, 542. In *Wakely* v. *Nicholas*, 16 Wisconsin, 620, under a statute requiring the payment of taxes equitably due as a condition of availing of irregularities in proceedings for sale, the Court said: "It does not destroy the remedy of defendant for any wrong or injustice which he may have actually received; nor compel him to purchase justice except at the expense of doing justice himself." Section 92 of Art. 5 of the Code (being ch. 164 of the Acts of 1867) provides that before any appeal from a Justice of the Peace can be heard in any of the Courts of this State, all costs incurred on the judgment and proceedings before the Justice aforesaid, must be paid by the appellant. This provision is not distinguishable in principle, or in its policy and purpose from that we are to pass upon here. It has been in force for nearly a third of a century, and if questioned in the lower Courts, it has never been brought to this Court for its judg-

ment.  In *B. & O. R. R. Co.* v. *Waltemyer*, 47 Md. 328,
that Act came before this Court for the first time in 1877,
but not as to its constitutionality, that question not being
raised, and the point decided was, that such payment was
not required as a condition of the appeal, but only of hear-
ing.   This case was  argued by distinguished counsel, and
their failure to raise this question can be best explained for
the reason given by JUSTICE THOMPSON in a similar case,
*Warren* v. *Commonwealth, supra,* where he said: " No-
body now thinks of doubting the constitutionality of these
laws, and the reason is that the right of trial by jury still
remains."

We  have carefully examined  all the authorities cited by
the appellant, and  we will  now briefly refer to those most
relied on.   The case of *Callan* v. *Wilson*, 127 U. S. 540,
arose on *habeas corpus* to  discharge the appellant from  the
custody of the appellee, as Marshal of the District of Col-
umbia, he being held on the charge of conspiracy, of which
he had been convicted before a Police Justice without a jury.
The statute provided that any one aggrieved by a judgment
of the Police Court may appeal to  the  Supreme  Court of
the District, and on appeal from that Court to the Supreme
Court of the United States. . Mr. JUSTICE HARLAN held
that except in  that grade of offences called  petty offences,
which *according to the course of the common law may be
proceeded against summarily in any tribunal legally consti-
tuted for that purpose* and providing for a  jury trial on ap-
peal, that Art. 3 of the Constitution of the United States, ·
secured to the  party the right to  jury trial *from the first
moment and in whatever Court he is put on trial,* and that the
statute  therefore was in  contravention of the Constitution.
But this was a criminal case and at common law would have
been so ruled, irrespective of the  constitutional  provision,
and is not in conflict with  the  cases we  have cited.   The
appellant also relied upon the case of *Copp* v. *Henniker*, 55
N. H. 179.   That case arose under  an Act requiring the
reference of certain causes, without  the  consent of parties,

and making the referee's report evidence for the consideration of the jury. A very elaborate opinion was delivered by JUDGE LADD, marked by much research and learning, but as he held that this compulsory reference being accompanied by a reasonably unfettered right of trial by jury on appeal did not infringe the constitutional right, we must presume that the appellant relied rather upon the abstract views expressed in the course of the opinion than upon the concrete judgment rendered and also upon the view expressed by the Judge outside of the opinion proper (since the referee's report had not been offered in evidence) that when such report should be offered, it should be excluded. Finally the appellant relies upon the decision in *Hoyer* v. *Colton,* 43 Md. Rep. 421, in which it was held that the Act of 1874, ch. 94, which required the party removing any civil case to pay the costs of the record, as a condition precedent to the right of removal was void, because it imposed a restraint upon the constitutional right of removal, and he asks us to substitute "the right of trial by jury" for the "right of removal" throughout the opinion of the Court in that case, and then accept it as his argument in this case. But there is a wide and obvious distinction between that case and the present which would prevent us, if this change were made, from accepting the opinion in its altered condition, and which we are satisfied would never have been offered to or accepted by the Court which rendered it. The right of removal was not a common law right. It originated in the Act of 1804, which when confirmed by the Act of 1805, became a part of the Constitution of the State. It must be read in its own light, and by the aid of decisions subsequent to 1805, and cannot be read in the reflected light of common law precedents, because it has no common law history behind it. As was said by JUDGE LADD in *Copp* v. *Henniker, supra,* "There are in certain cases various statutory provisions, with which parties must comply in order to obtain a jury trial, and which are valid because their requirements were incidents of the historical right which the

Constitution adopted and guaranteed." But this is not such a case. This provision of the Constitution rejects one of the conspicuous common law features of jury trial, in that, whereas the sworn twelve were originally summoned from the vicinage on account of their knowledge of the case and its surroundings, this very knowledge is made the peremptory ground of the right of removal. For the case with which JUDGE ROBINSON dealt, applying the language of CH. J. DURFEE, his opinion was not only cogent, but absolutely convincing, for the reason that we are not only at liberty, but are required to regard simply the language of the provision itself. The latest and the most thorough and satisfactory examination of this subject which we have seen is the case of *Smith* v. *The Times Publishing Co.*, 178 Pa. St. 481, in which separate concurring opinions were delivered by five judges. The Act of 1891 conferred upon the Supreme Court the power to reverse the lower Court for excessive damages, even where the lower Court had denied a motion for a new trial, and the result of these five opinions is, that the Act was constitutional, and that the constitutional guarantee is not violated "where the right of trial by jury is preserved before the final decision, in all cases where it would have existed at the time of the adoption of the Constitution, and where all contested issues of fact are determined by a jury and in no other way ; and that any legislation therefore which merely points out the mode of arriving at this object, but does not rob the right of its essential ingredients, cannot be considered an infringement of the right." We entertain no doubt of the correctness of the order of the Superior Court—and it will therefore be affirmed with costs.

*Order affirmed with costs.*

(Decided June 28th, 1898).