LEBRUN ET AL. *v.* MARCEY
[No. 84, October Term, 1951.]

224

*Decided February 8, 1952.*

*Rehearing denied March 4, 1952.*

The cause was argued before MARBURY, C. J., and DELAPLAINE, COLLINS, HENDERSON and MARKELL, JJ.

*Mark P. Friedlander*, with whom were *Meatyard & Carlin* on the brief, for the appellants.

*Edward L. Foster*, with whom were *William B. Wheeler* and *Ralph J. Luttrell* on the brief, for the appellee.

MARKELL, J., delivered the opinion of the Court.

This is an appeal from a summary judgment in an action on the promissory note that was involved in *LeBrun v. Prosise*, 197 Md. 466, 79 A. 2d 543. In that case plaintiff in the instant case was one of the defendants; defendants in the instant case were the plaintiffs. At the argument the principal question discussed was whether the doctrine of *res judicata* makes the decision in that case decisive of this case.

The *Prosise* case was a suit in equity to enjoin foreclosure of the deed of trust which purported to secure the note, and to procure cancellation of the deed of trust and surrender of the note for cancellation. Marcey asked that the deed of trust be established as an equitable lien. We held that the deed of trust was null and void for want of acknowledgment and effective recording, and also, having been "fraudulently and illegally certified [to have been acknowledged] and recorded", was not effective as an equitable lien. We held that "* * * Marcey was a holder in due course", and "The fact that the certification [by Sherwood that the note had been signed in his presence] was false * * * does not invalidate the note [because no such certification is essential]. There is consequently no ground for requiring Marcey to surrender the note for cancellation." The only contention that Marcey was not a holder in due course was that he was privy to the frauds of the trust company on the part of Prosise and Sherwood. We held he was not privy to these frauds. Apparently everyone, including the plaintiffs, the lower court and this

court, assumed, or inferred, that the note was endorsed, without recourse, by the trust company when it was sold to Marcey on March 27, 1947, more than eleven months before maturity.

In the instant case defendants say that the title of the trust company was "defective" when it negotiated the note "in breach of faith, or under such circumstances as amounts to a fraud" (Code, Art. 13, sec. 74), and therefore Marcey has the burden "to prove that he * * * acquired the title as a holder in due course" (Art. 13, sec. 78), and he has failed to sustain the burden of proving "that he became the holder of it before it was overdue". Art. 13, sec. 71. "* * * for the purpose of determining whether the transferee [of an instrument transferred without indorsement and later indorsed] is a holder in due course, the negotiation takes effect as of the time when the indorsement is actually made." Art. 13, sec. 68. Defendants say that early in the *Prosise* case, after Marcey's check had shown that he had paid $15,000 for the note, they felt they had no possibility of requiring the surrender of the note, whether he was a holder in due course or not, and thereafter they argued that he was not a holder in due course, only as against his claim to an equitable lien. They contend that our holding, or statement, that he was a holder in due course was not a basis of decision in the *Prosise* case and is not *res judicata* in the instant case; that on different evidence we should now find that he was not a holder in due course, and specifically that he has failed to show that he became the holder before maturity.

"The scope of the estoppel of a judgment depends upon whether the question arises in a subsequent action between the same parties upon the same claim or demand upon a different claim or demand. In the former case a judgment upon the merits is an absolute bar to the subsequent action. In the latter the inquiry is whether the point or question to be determined in the later action is the same as that litigated and determined in the original action. [Citing cases.]" *Tait v. Western Maryland*

*Ry. Co.*, 289 U. S. 620, 623, 53 S. Ct. 706, 707, 77 L. Ed. 1405. "In the former case, the judgment, if rendered upon the merits, constitutes an absolute bar to a subsequent action. It is a finality as to the claim or demand in controversy, concluding parties and those in privity with them, not only as to every matter which was offered and received to sustain or defeat the claim or demand, but as to any other admissible matter which might have been offered for that purpose. * * * But where the second action between the same parties is upon a different claim or demand, the judgment in the prior action operates as an estoppel only as to those matters in issue or points controverted, upon the determination of which the finding or verdict was rendered. In all cases, therefore, where it is sought to apply the estoppel of a judgment rendered upon one cause of action to matters arising in a suit upon a different cause of action, the inquiry must always be as to the point or question actually litigated and determined in the original action, not what might have been thus litigated and determined. Only upon such matters is the judgment conclusive in another action." *Cromwell v. County of Sac,* 94 U. S. 351, 352-353, 24 L. Ed. 195. See also *Restatement, Judgments,* Chapter 3, Introductory Statement. "§ 68. Questions of Fact. (1) Where a question of fact essential to the judgment is actually litigated and determined by a valid and final judgment, the determination is conclusive between the parties in a subsequent action on a different cause of action [with exceptions not now material]." * * * "o. Facts not essential to the judgment.—The rules stated in this Section are applicable only where the facts determined are essential to the judgment. Where the jury or the court makes findings of fact but the judgment is not dependent upon these findings, they are not conclusive between the parties in a subsequent action based upon a different cause of action. Thus, if the defendant interposes two defenses, either of which is sufficient to bar the plaintiff's claim, and there is a finding for the defendant on one of the issues, a finding for the

plaintiff on the other issue is immaterial to the judgment, since the judgment would be for the defendant whichever way the court should find on the other issue. This situation is to be distinguished from that dealt with in Comment *n* where both issues are found for the defendant, in which case each finding is as material as the other. The distinction as to the application of the doctrine of *res judicata* between the rule stated in Comment *n* and that stated in Comment *o* is not unlike the distinction in the doctrine of *stare decisis* between alternative grounds for a decision and a mere *dictum.*" See illustrations 9-13. See also *Freeman* on *Judgments,* (5th Ed.) § 697. "A matter alleged that is neither traversable nor material shall not estop." *Coke on Littleton,* 352 b; "judgments 'are conclusive as to nothing which might not have been in question, or were not material'." Baron Comyn, quoted in *Reynolds v. Stockton,* 140 U. S. 254, 269, 11 S. Ct. 773, 777, 35 L. Ed. 464.

Whether, or how far, our statement in the *Prosise* case that Marcey was a holder in due course was material in that case and is *res judicata* in this case, we find it unnecessary to decide. In our view of the case, we may assume, without deciding, that it was not material and is not *res judicata.* It is likewise unnecessary to pass upon defendants' contention that the lower court improperly took judicial notice of its own record in the *Prosise* case. We may, however, repeat that this court takes judicial notice of its own records. *Fletcher v. Flournoy,* 198 Md. 53, 81 A. 2d 232. The lower court, therefore, may and should take judicial notice of the record in this court of a case in that court. In the *Prosise* case the record in this court is in effect the entire record in the case.

In the instant case defendants took depositions of Marcey and of Charles T. Merchant, the vice-president of the trust company who signed the undated endorsement to Marcey. Marcey testified, among other things, that he never saw the note until some time after maturity, he left it with the trust company to hold and

collect for him; when he discovered that the deed of trust was a second trust (not, as represented, a first trust, and not a valid trust at all), at the instance of the bank examiners he signed a waiver of claim against the trust company. Why he did so or was asked to do so, he did not say and was not asked. One possible reason might be that he had been privy to the frauds of Prosise and Sherwood against defendants. A no less possible reason might be an opposite surmise that as director he had exercised no supervision over the trust company's business or the conduct or misconduct of its officers. Neither of these surmises would be more than a surmise or would be a legitimate inference from evidence. Merchant testified, among other things, that "that note was never an asset in the bank"; "Q. How did you sign the endorsement? A. I was asked by Mr. Prosise. Q. When? A. At the time Mr. Marcey *offered* the note. There wouldn't be any records at the bank because there never was any assets in the bank. It never went on the bank's books"; this note not having been recorded as an asset of the bank, "it would not show any transfer. * * * We wouldn't have any records except for the collection of the note from [for?] Mr. Marcey. * * * Q. How about when the note was delivered to the bank, would you have a record of it then? A. No. * * * That note was never in the bank as assets. Q. Either as collateral or owned? A. Not to my knowledge"; he hasn't any way of fixing the date that he actually signed the endorsement; "because unless there was something particular about the note to call my attention—or, rather, to call my attention particularly to it—I wouldn't like to say what date, but I would presume the same date. * * * I have no memory of the date * * * That was done in the regular course of business."

Since the argument counsel for plaintiff has sent us, and to opposing counsel, a letter, with a letter and affidavit from the shorthand reporter who took the deposition, stating that the above answer "At the time

Mr. Marcey *offered* the note" should read "At the time Mr. Marcey *purchased* the note". In the absence of dispute as to this correction, we think we may accept this correction, of an apparent error, as if it were more formally made by writ of diminution or otherwise.

In the *Prosise* case the plaintiffs contended that the note was given as collateral for the furnace account alone, the defendants that it was given as collateral for all of Le Brun's indebtedness. Merchant's testimony that it was never owned or held as collateral by the bank, (and, therefore, must have been in a vacuum for seventeen days until it was sold by the bank to Marcey), and that the bank had no record of it, is incomprehensible, and is an astonishing addition to the evidence in the *Prosise* case of the irregular way in which the bank did business. Nevertheless, after allowance for the apparent carelessness of the bank's officers and the actual fraud and bad faith of at least two of them and for Merchant's haze as to the exact date, we can find no reason to disbelieve Merchant's testimony that he endorsed the note when it was sold to Marcey. It is incredible that even this bank could have omitted so simple and so essential an act.

We find no lack of proof that Marcey was a holder in due course, and nothing in the pleadings, affidavits or depositions indicating that there is any genuine dispute as to any material fact. Summary Judgment Rule 4(a).

*Judgment affirmed, with costs.*