530 A.2d 724

**Maude E. HIGGINS**

v.

**James V. BARNES, et ux.**

**No. 134, Sept. Term, 1985.**

Court of Appeals of Maryland.

Sept. 11, 1987.

**534**

Elwood E. Swam, Hamstead, for appellant.

Thomas F. Stansfield, Westminster, for appellee.

Argued before MURPHY, C.J., and SMITH *, ELDRIDGE, COLE, RODOWSKY, COUCH * and McAULIFFE, JJ.

McAULIFFE, Judge.

The merger of law and equity was accomplished in this State on July 1, 1984, as a part of a comprehensive revision of the Maryland Rules of Procedure. This appeal involves the impact of that change upon the right to jury trial, and specifically the question of whether one filing a counterclaim for damages in a specific performance action may obtain a jury trial of the issues presented by the counterclaim. We shall hold that under the facts of this case the demand for jury trial on those issues should have been granted. We shall also decide two additional questions posited by Petitioner: the first concerning the parol evidence rule and the second concerning the correctness of a finding made by the trial judge.

I.

This dispute arises out of a written contract entered into by James and Rebecca Barnes (hereinafter collectively "Barnes") and Maude Higgins ("Higgins"). The bargain was basically this: Barnes agreed to transfer two unimproved lots worth $45,000 to Higgins and to erect thereon a structure that would serve as living quarters for Higgins and as a protective care facility for four adults. Higgins agreed to transfer a single improved lot worth $65,000 to Barnes, subject to an existing mortgage that Barnes agreed to assume. Higgins could remain in the home she conveyed

---

* SMITH and COUCH, JJ., now retired, participated in the hearing and conference of this case while active members of this Court; after being recalled pursuant to the Constitution, Article IV, Section 3A, they also participated in the decision and adoption of this opinion.

to Barnes until ten days after a payment date which was to follow the issuance of a use and occupancy permit for the new building and of a protective care license to Higgins. Higgins also agreed to pay Barnes "rent" of $600 per month during her pre-payment occupancy, with the understanding that all such payments were to be credited against the ultimate settlement amount Higgins would owe. The net amount due by Higgins to Barnes on the payment date was to be computed by adding the current balance due on the assumed mortgage to a specified base figure of $91,350, and then deducting the "rent" payments made by Higgins. Finally, Higgins agreed to give Barnes a first mortgage to secure the payment of the amount so determined.

The lots were exchanged, Barnes built a new building, and Higgins moved in. However, Higgins declined to execute a mortgage that included the base price which was stipulated in the contract, claiming that she was entitled to a credit because of alleged construction deficiencies. Barnes sued Higgins for specific performance of the contract or, in the alternative, for damages of $120,000. Higgins answered the complaint and filed a counterclaim for $120,000, alleging in each pleading that she had been damaged by Barnes' failure to construct the building in accordance with the agreed plans and specifications.[1] At the same time, Higgins filed a demand for trial by jury. Barnes

---

1. We note at the outset that under the particular facts of this case Higgins need not have filed a counterclaim to raise the issue of breach of contract by Barnes resulting from deficient construction of the building. This was a matter of defense inexorably intertwined with the determination of Barnes' claim, and properly could be raised by answer to the complaint. *Balto. Fed. S. & L. Ass'n v. Gordon,* 272 Md. 52, 321 A.2d 157 (1974); *E.J. Smith Constr. Co. v. Burton,* 262 Md. 62, 277 A.2d 84 (1971). We also recognize that Higgins' counterclaim would not qualify as a separate claim under Rule 2-602. *East v. Gilchrist,* 293 Md. 453, 445 A.2d 343 (1982). As will more fully appear hereafter, these facts do not affect our decision because our concern is with the nature of the *issues* legitimately raised by the pleadings, and not with the labels given to the pleadings. The legal issues in this case were identified by Higgins' particularized answer to the complaint, and our decision does not turn on the fact that a counterclaim was filed.

countered with a motion to strike the demand for a jury trial, contending that specific performance was historically an action in equity and that, once equitable jurisdiction attached, the entire case must be determined by a judge and not a jury. Alternatively, Barnes suggested that separate trials be provided for the complaint and the counterclaim. Judge Luke Burns granted the motion to strike the demand for jury trial, holding that the merger of law and equity accomplished by the rules change had no effect on the right to a jury trial. Trial was had before Judge H. Chester Goudy, who determined that Higgins was entitled to a credit of $6,000 for damages due to construction deficiencies, and that Barnes was entitled to specific performance, i.e. to the delivery of a first mortgage in an amount computed in accordance with the formula set forth in the contract less the amount of damages. Higgins appealed the resulting judgment to the Court of Special Appeals, and we issued the writ of certiorari before the case was heard by that court.

## II.

### Parol Evidence

At trial, Barnes offered testimony to show that the figure of $91,350, stipulated in the contract to be the base from which the amount of the mortgage was to be calculated, was in error. Barnes offered to show through the attorney who had drawn the contract at the joint request of the parties that the figure should have been $94,350, and that the $3,000 difference resulted from an arithmetical error on the part of the attorney. More specifically, Barnes proffered the attorney would testify the parties had agreed that $114,350 was a fair price for the construction of the new building, and that after deduction of the $20,000 differential in the value of the exchanged lots, Higgins would owe Barnes $94,350, subject only to adjustment for the amount of the mortgage Barnes was assuming and the amount of the "rent" payments made by Higgins.

The trial judge conditionally accepted the proffered testimony, subject to his ultimate determination of whether there was an ambiguity in the contract that would justify the receipt of parol evidence. Higgins contends the trial judge utilized the proffered evidence without finding any ambiguity, and that, in any event, there was no ambiguity in the contract that justified resort to parol evidence. We agree.

■ Ordinarily, parol evidence is inadmissible to vary, alter, or contradict a contract that is complete and unambiguous. *Bernstein v. Kapneck,* 290 Md. 452, 460, 430 A.2d 602 (1981). An exception to the rule is that parol evidence may be admitted to reform a written instrument upon a showing of fraud, duress, or mutual mistake. *McLain v. Pernell,* 255 Md. 569, 572-73, 258 A.2d 416 (1969). Without the presence of one of these excusing factors "one having the capacity to understand a written document who reads it, or, without reading it or having it read to him, signs it, is bound by his signature." *Rossi v. Douglas,* 203 Md. 190, 199, 100 A.2d 3 (1953). *See also Canaras v. Lift Truck Services,* 272 Md. 337, 344, 322 A.2d 866 (1974). The figure $91,350 may not be read to have two different meanings. There was no ambiguity here that required resolution. Rather, there appears to have been an error committed by the scrivener of the contract in his efforts to reduce the oral understanding of the parties to a written contract. A mistake of that kind may be corrected, but the correction is accomplished through the equitable action of reformation, and not as an "interpretation" of a provision that is unambiguous. *Hoffman v. Chapman,* 182 Md. 208, 210, 34 A.2d 438 (1943).

In his pleadings Barnes did not allege a mutual mistake or request a reformation of the contract, nor did he at any time ask leave to amend his complaint to include such an averment or demand for relief. Although Barnes could have joined a claim for reformation with his claim for specific performance, *see Brockmeyer v. Norris,* 177 Md. 466, 10 A.2d 326 (1940) and Maryland Rule 2-303(c), he did

not do so. Had he discovered the alleged mistake in the course of trial, he could have asked leave to amend his complaint, and the trial judge would have been called upon to exercise his discretion. Had the trial judge determined to grant the amendment, he would have then considered whether to grant a continuance to allow Higgins additional time for investigation, discovery, research, and preparation.

A claim for reformation differs significantly from a claim that parol evidence is admissible to explain an ambiguity. The principles involved, and the standards of persuasion that must be met, are entirely different. Fraud, duress, or mutual mistake must be shown to justify a reformation, but are not involved in the question of the existence of an ambiguity in the contract. The burden of persuasion upon a party seeking reformation of an instrument is significantly higher than the preponderance standard used to determine the existence of an ambiguity. As Judge Prescott said for the Court in *Moyer v. Title Guarantee Co.*, 227 Md. 499, 504, 177 A.2d 714 (1962):

> The request for the reformation of a written instrument is one for unusual relief, and when granted, it differs from rescission, cancellation or annulment of the document. Unlike these, the instrument remains in force and effect, but in a modified, or changed form; hence, before granting the high remedy of reformation, the proof must not only establish that the written agreement was not the agreement intended by the parties, but also what was the agreement contemplated by them at the time it was executed.... Before performing the difficult and delicate task of reforming an agreement after the parties have solemnized it by reducing it to writing and executing the same, *this Court has consistently required proof of the highest order.* In *Keedy v. Nally,* 63 Md. 311, 316 [1885], Judge Alvey, for the Court, said that the plaintiff, 'must not only show clearly and beyond doubt that there has been a mistake, but he must also be able to show with equal clearness and certainty the *exact* and *precise* form and import that the instrument ought to

be made to assume, in order that it may express and effectuate what was really intended by the parties.' ... Again, in *White v. Shaffer,* 130 Md. 351, 360, 99 A. 66 [1917], it was stated: ' "Not only must a mutual mistake be shown, but the precise agreement which the parties intended but failed to express must be proven beyond a reasonable doubt. *Second Nat'l Bank v. Wrightson,* 63 Md. 81 [1885]; *Bouldin [Boulden] v. Wood,* 96 Md. 336 [332] (53 A. 911) [1903]. And *the evidence required for this purpose must be of the strongest character* and the proof must be convincing." ' (emphasis added.)

*See also Flester v. Ohio Cas. Ins. Co.,* 269 Md. 544, 555–57, 307 A.2d 663 (1973).

Barnes' failure to put his opponent and the trial court on fair notice of the issue that he now says was being litigated was a significant omission. The proffered evidence was offered and accepted on the basis of an ambiguity in the contract. Neither Higgins nor the trial judge was given the opportunity to consider the issue that Barnes now argues is controlling, and the issue was not examined or determined under the correct standard of persuasion. Barnes' argument for admissibility rose or fell on his contention that the contract was ambiguous, and because there was no ambiguity the trial judge erred in admitting evidence of the "mistake."

Because additional trial proceedings will be required by our decision on another issue in this case, and because we believe the interests of justice will be served by allowing Barnes to amend his complaint to include a claim for reformation which may then be considered by the trial judge without possibility of prejudice to Higgins' rights, we direct the trial court to permit that amendment. *See* Maryland Rule 871.

### III.

#### The Difference in Lot Values

Higgins also contends the trial judge erred in failing to give her an additional credit of $20,000 because of the

admitted difference in value of the lots the parties agreed to exchange. This contention has no merit. The base figure included in the contract necessarily reflected the parties' understanding of the difference in value of the exchanged lots as well as their agreement concerning the price to be paid to Barnes for the construction of the new building. If Higgins did not consider the difference in value of the lots before entering into the contract, she may have made a bad bargain, but courts do not exist to relieve parties from bad bargains or to re-write their contracts for them. Moreover, there is no indication that the absence of a provision calling for a further adjustment based upon the difference in value of the lots constituted a mutual mistake of the parties. Finally, the contract was not ambiguous on this point, and if an ambiguity had been found the testimony of the scrivener would have made clear that the parties gave full consideration to the difference in land values in arriving at the base price fixed by the contract.

## IV.

### *Trial by Jury*

Prior to the comprehensive rules change that became effective July 1, 1984, the historical separation of law and equity had been scrupulously maintained in this State. Civil actions were required to be filed as either law or equity actions. With few exceptions jury trials were unavailable in cases filed on the equity side of the court, and equity relief was unavailable in law actions.[2] The concept of

---

2. Before merger, the Legislature occasionally provided for a jury trial in an equity proceeding. *See, e.g.,* former Section 12–114(c) of the Health-General Article, Md. Code (1982), permitting jury determination of an application filed in equity for release following commitment after a finding of not guilty by reason of insanity. Law courts occasionally exercised traditionally equitable powers in a law action, as when an injunction was issued following determination of issues by a jury (*see* former Rules BF40–BF43), and when a judge decided the equities of granting ejectment following a jury verdict of a breach of lease. Until 1961, advisory jury verdicts were permitted in equity

equitable "clean-up" allowed a chancellor in equity to decide virtually all issues that legitimately found their way into the equity court, whether by claim, counterclaim, cross-claim, or third-party action, and whether the issues were historically legal or equitable in nature. This situation gave rise to concern that expansion of equity jurisdiction and the concomitant increase in the exercise of "clean-up" powers not only threatened, but in fact had eroded the right to a jury trial guaranteed by Article 23 of the Maryland Declaration of Rights. *See, e.g.,* C. Brown, *The Law/Equity Dichotomy in Maryland,* 39 Md.L.Rev. 427 (1980).

Now that the merger of law and equity has been accomplished, and parties may join legal and equitable claims in a single civil action to be decided by a court no longer divided into law and equity sides, this Court must determine the impact the rules change shall have upon the availability of trial by jury. A review of the cases decided by courts of other states that have accomplished the merger of law and equity reveals a variety of approaches and philosophies, ranging from a jealous protection of the right of jury trial to a preference for the "efficiency" of having a judge determine all issues in any case involving a legitimate equitable claim. A middle ground of cases makes the right to jury trial depend upon whether the issues in the case are predominantly legal or predominantly equitable in nature.

The merger was accomplished in the federal courts by the adoption of the Federal Rules of Civil Procedure in 1938, and the United States Supreme Court has definitively stated the federal position. Jury decisions of disputed legal issues are clearly favored, and whenever practicable the jury determination of any issue common to both legal and equitable claims should precede court consideration of the equitable issues. *Ross v. Bernhard,* 396 U.S. 531, 90 S.Ct. 733, 24 L.Ed.2d 729 (1970); *Dairy Queen v. Wood,* 369 U.S.

---

actions. At a much earlier time equity courts routinely referred contested questions of fact to juries for determination.

469, 82 S.Ct. 894, 8 L.Ed.2d 44 (1962); *Beacon Theatres v. Westover*, 359 U.S. 500, 79 S.Ct. 948, 3 L.Ed.2d 988 (1959).

Article 23 of the Maryland Declaration of Rights provides in part:

> The right of trial by Jury of all issues of fact in civil proceedings in the several Courts of Law in this State, where the amount in controversy exceeds the sum of five hundred dollars, shall be inviolably preserved.

This Court long ago recognized that this provision preserves "unimpaired the ultimate historical right as it existed at the time of our separation from the mother country...." *Knee v. City Pass. Ry. Co.*, 87 Md. 623, 627, 40 A. 890 (1898) (discussing Art. 15, § 6 of Constitution of 1867, a precursor of Art. 23 of the Declaration of Rights). As jury trials were historically available in actions at law, constitutionally the right must still exist as to any legal issue holding the right to jury trial in 1776.[3] Although the Maryland Constitution was written during the time of separate systems of law and equity, its guarantees remain as absolute under a merged system. As noted by the federal courts in an analogous evaluation of the relationship between the federal rule accomplishing merger and the jury trial guarantee of the Seventh Amendment,[4] the Rules are

---

**3.** The Court in *Knee v. City Pass. Ry. Co.*, 87 Md. 623, 40 A. 890 (1898), traced the right to trial by jury back to its origin in the laws of this State, Art. 5 of the Declaration of Rights, which stated: "The inhabitants of Maryland are entitled to the common law of England, and the trial by jury, *according to the course of that law.*" The Court explained the significance of this origin stating:

> Language of similar import, is found in the Constitution of each of the United States, and the authorities are therefore naturally uniform to the effect, that it is the historical trial by jury, as it existed when the Constitution of the State was first adopted, to which the inhabitants of each State are entitled; and whatever nature of regulations, or restrictions, of that right existed in practice at that day, it has ever since been lawful to maintain, and now is lawful to establish. *Id.* at 624, 40 A. 890.

**4.** The Seventh Amendment to the United States Constitution states: "In Suits at common law, where the value in controversy shall exceed twenty dollars, the right of trial by jury shall be preserved,

"something short" of the Constitution so that no party can be deemed to have waived the right to a jury trial on a legal claim because the Rules permit or require asserting it as a counterclaim in an equitable action. *Thermo-Stitch, Inc. v. Chemi-Cord Processing Corp.*, 294 F.2d 486, 488 (5th Cir. 1961).

Maryland Rule 2–301, abolishing the separation of law and equity states: "There shall be one form of action known as 'civil action.' " Federal Rule of Civil Procedure 2, accomplishing the same purpose, provides: "There shall be one form of action to be known as 'civil action.' " The essentially identical language of the two rules is not coincidental. The commentary to Md. Rule 2–301 specifically notes that the rule "is derived" from the Federal Rule. For this reason, and because Maryland courts have traditionally relied on the federal courts' interpretations of analogous rules as persuasive authority, *East v. Gilchrist*, 293 Md. 453, 459, 445 A.2d 343 (1982); *Edmonds v. Lupton*, 253 Md. 93, 99, 252 A.2d 71 (1969), we turn to the federal case law for guidance in defining the scope of the right to jury trial in Maryland. In *Beacon Theatres v. Westover, supra*, the Supreme Court first confronted the threat to jury trial posed by a merged system in a suit similar in posture to the one presented to this Court: the assertion of a legal counterclaim in a suit seeking equitable relief. Fox West Coast Theatres had entered into a number of contracts with movie distributors granting it the exclusive right to show "first run" movies in its competitive area for a certain period of time. Beacon Theatres notified Fox that it considered these contracts to be in violation of the antitrust laws. According to Fox, Beacon threatened treble damage suits, to which Fox responded by filing a complaint seeking both a declaration that its contracts were not in violation of the antitrust laws, and an injunction preventing Beacon from instituting

and no fact tried by a jury, shall be otherwise re-examined in any Court of the United States, than according to the rules of common law."

any action under the antitrust laws until final resolution of the pending litigation. Beacon counterclaimed seeking treble damages for alleged antitrust violations and demanded a jury trial.

The district court found that the issues of the case were basically equitable even though resolution of both the complaint and the counterclaim depended upon the common legal issue of the reasonableness of the rights granted to Fox in the contracts. The Ninth Circuit Court of Appeals upheld the district court even though it recognized that proceeding first in equity on the complaint might, through collateral estoppel, prevent the case from ever reaching a jury trial on the counterclaim. The Supreme Court reversed, stating that, even assuming the case was one in which equity traditionally would have jurisdiction of the entire suit, under the Federal Rules the posture of the case could not justify denying the defendant its right to a jury trial on the counterclaim for damages. Where the existence of both legal and equitable issues within the same case requires selection between the jury and the court as the determiner of common issues, the discretion of the trial court "is very narrowly limited and must, wherever possible, be exercised to preserve jury trial." *Beacon Theatres, supra*, 359 U.S. at 510, 79 S.Ct. at 956.

As the Fifth Circuit Court of Appeals in *Thermo-Stitch, supra*, explained:

Analogizing a motion for a non-jury trial of common issues to a suit for an injunction, the Court held that a showing of irreparable injury and inadequate relief at law is required: "The basis of injunctive relief in the federal courts has always been irreparable harm and inadequacy of legal remedies. At least as much is required to justify a trial court in using its discretion under the Federal Rules to allow claims of equitable origins to be tried ahead of legal ones, since this has the same effect as an equitable injunction of legal claims." While the right to trial by jury is a constitutional one, no similar importance attaches to trial by court. Under the flexible procedures

of the Federal Rules, a jury determines issues pertinent to an equitable cause without interruption or prejudice to the proceeding; the court decides whether equitable relief is called for on the basis of the jury's findings of fact. The mere presence of an equitable cause furnishes no justification for depriving a party to a legal action of his right to a jury trial. (Citation and footnotes omitted.) 294 F.2d at 490–91 (quoting in part *Beacon Theatres, supra,* 359 U.S. at 506–07, 79 S.Ct. at 954).

Thus, since the Supreme Court's initial discussion in *Beacon Theatres,* the federal courts hold that "only under the most imperative circumstances [5] ... can the right to a jury trial of legal issues be lost through prior determination of equitable issues." *Beacon Theatres, supra,* 359 U.S. at 510–11, 79 S.Ct. at 957; *see also Ross v. Bernard,* and *Dairy Queen v. Wood,* both *supra.* This strong protection of a jury right to decide legal issues applies even where a trial judge "characterize[s] the legal issues presented as 'incidental' to equitable issues...." *Dairy Queen,* 369 U.S. at 473, 82 S.Ct. at 897. At least one court has held that the relative significance of the legal issues as compared to the equitable issues in the cases is not significant:

It would make no difference if the equitable cause clearly outweighed the legal cause so that the basic issue of the case taken as a whole is equitable. As long as any legal cause is involved the jury rights it creates control. *Thermo-Stitch,* 294 F.2d at 491.

The federal courts have applied these principles in factual situations similar to that currently before this Court. In *Myers v. United States Dist. Court, Etc.,* 620 F.2d 741 (9th Cir.1980), the plaintiff, John Hancock Mutual Life Insurance Company, filed suit against Myers to foreclose on a mortgage it held on real estate owned by Myers. Myers

---

**5.** The Court went on to note that, in view of the flexible procedures permitted under the Federal Rules, it could not anticipate such imperative circumstances. *Beacon Theatres, supra,* 359 U.S. at 511, 79 S.Ct. at 957.

counterclaimed for breach of contract and interference with business relations and demanded a jury trial on the counterclaim.[6] In reviewing Myers' petition for mandamus directing the district court to afford a jury trial, the Ninth Circuit Court of Appeals applied the test of whether a party is "raising a claim which, prior to the ratification of the Seventh Amendment, would have been raised in a court of law rather than a court of equity." *Id.* at 743. As claims for breach of contract are "historically legal," Myers was "entitled to a jury trial on that and any other issue raised in his counterclaim which the court determine[d to be] 'legal,'" notwithstanding that the counterclaim ultimately sought equitable relief—release of the mortgage. *Id.* at 744. Quoting *Ross v. Bernhard, supra,* 396 U.S. at 537–38, 90 S.Ct. at 738, the *Myers* court concluded:

> "[W]here equitable and legal claims are joined in the same action, there is a right to jury trial on the legal claims which must not be infringed ... by trying the legal issues as incidental to the equitable ones.... The Seventh Amendment question depends on the nature of the issue to be tried rather than the character of the overall action." 620 F.2d at 744.

*See also Tull v. U.S.,* —— U.S. ——, 107 S.Ct. 1831, 95 L.Ed.2d 365 (1987) (the language of the Seventh Amendment requires a jury trial in actions analogous to "suits at common law"). The Court of Appeals for the Third Circuit reached the same result in *Eldredge v. Gourley,* 505 F.2d 769 (3rd Cir.1974). There, the plaintiff brought an equitable action to partition real estate and the defendant counterclaimed alleging breach of an oral agreement to pay certain acquisition costs and expenses, and to refrain from dividing the land. The court held that where a counterclaim raised issues which were traditionally subject to resolution by jury, and the resolution of which would be dispositive of

---

6. This suit was originally filed in Montana's state court. The trial judge in the state court granted the demand for jury trial. The United States then, as an intervening party, had the case removed to federal court where the district court judge set the case for a non-jury trial.

the original claim, the defendant's demand for jury trial could not be denied unless the district judge concluded that, as a matter of state law, the counterclaim had no merit. 505 F.2d at 770.

In the federal courts, then, the entitlement to jury trial is not determined simply by the characterization of the action as a whole as legal or equitable. If an asserted counterclaim presents a legal claim historically accorded the right to jury trial and raises factual issues in common with the plaintiff's equitable claim, the defendant is ordinarily entitled to a jury determination of those factual legal issues. *Beacon Theatres* and its progeny speak of some narrow discretion of a trial court to deny a jury trial in "the most imperative circumstances," but the lower federal courts have seldom recognized such circumstances.[7]

---

7. The federal courts seem unlikely to recognize procedural complexity as such a circumstance. In *Eli Lilly and Co. v. Generix Drug Sales, Inc.*, 460 F.2d 1096 (5th Cir.1972), the court found no imperative circumstances established where proceedings had to be trifurcated. The first step was a trial to the court on a preliminary injunction, necessitating that it make preliminary fact findings to govern the parties during the litigation. Second, the parties proceeded with a jury trial on the legal counterclaims. Third, in light of the jury's factual findings and bound by them, the trial court was to reevaluate its decision as to the appropriateness of relief.

Although the third prong of the so-called "Ross test" (set forth in *Ross v. Bernard, supra,* 396 U.S. at 538, n. 10, 90 S.Ct. at 738, n. 10), dictates consideration of "the practical abilities and limitations of juries" in determining which issues are "legal" in nature, the majority of federal courts considering the question have not found complexity of the issues a sufficient ground to deny a jury trial. *See, e.g., Davis & Cox v. Summa Corp.,* 751 F.2d 1507, 1516 (9th Cir.1985) and *In Re U.S. Financial Securities Litigation,* 609 F.2d 411 (9th Cir.1979), *cert. denied,* 446 U.S. 929, 100 S.Ct. 1866, 64 L.Ed.2d 281 (1980). *Contra In Re Japanese Electronic Products Antitrust Lit.,* 631 F.2d 1069, 1090 (3rd Cir.1980). *See generally* Annot., *Complexity of Civil Actions As Affecting Seventh Amendment Right To Trial By Jury,* 54 A.L.R.Fed. 733 (1981), and Note, *Complex Civil Litigation And The Seventh Amendment Right To A Jury Trial,* 51 Chi.L.Rev. 581 (1984).

Courts have suggested that situations could exist where resolution of common factual issues by jury determination prior to court resolution of the equitable claims "would not in all respects protect the plaintiff seeking equitable relief from irreparable harm." *Beacon Theatres,* 359 U.S. at 510–11, 79 S.Ct. at 956. Our research has uncovered no

Alternatives to the federal approach fail to safeguard the constitutionally protected right to jury trial. Granting or denying a jury trial based on the characterization of the action as "essentially legal" or "essentially equitable" has produced unpredictable results and offers little certainty to litigants in planning their own actions.[8] Determining the applicability of the jury trial right based on the nature of the first claim asserted may give an unwarranted "windfall" to the plaintiff, by enabling him "unilaterally to decide in many instances if he wants or does not want a jury trial." C. Brown, *supra*, at 474. Finally, adoption of a "waiver" theory by which a defendant who asserts a legal counterclaim in an action initiated in equity is deemed to have waived his right to trial by jury places the defendant in an impermissible "catch–22" situation. This approach was discredited in the federal system because of the conflict between compulsory counterclaims and the right to jury trial. Under Federal Rule 13, if a defendant fails to assert in the original action a claim arising out of the subject matter of the plaintiff's claim[9], that party may not assert the claim independently in a later action. Thus the federal courts recognize that, to hold that a defendant waives his right to a jury trial if he asserts his counterclaim, but at the same time preclude him from asserting the claim separately,

---

case, however, where the federal court denied a jury trial on this basis.

Jury trial of legal issues has been denied when national security would be threatened by public disclosure of the disputed facts. *Loral Corp. v. McDonnell Douglas Corp.*, 558 F.2d 1130 (2nd Cir.1977).

**8.** For a discussion of the uncertainty created by the "essentially legal" test for jury trials see R. Bourne and J. Lynch, *Merger of Law and Equity Under the Revised Maryland Rules: Does it Threaten Trial By Jury?* 14 U.Balt.L.Rev. 1, 17–20 (1984).

**9.** Federal Rule 13(a) provides in pertinent part:
COMPULSORY COUNTERCLAIMS. A pleading shall state as a counterclaim any claim which at the time of serving the pleading the pleader has against any opposing party, if it arises out of the transaction or occurrence that is the subject matter of the opposing party's claim and does not require for its adjudication the presence of third parties of whom the court cannot acquire jurisdiction.

would effectively deprive him of his constitutional right to trial by jury.

While the Maryland Rules of Procedure do not speak of compulsory counterclaims, our broad definition of res judicata will, in many cases, have the same effect. This Court set out the definition of res judicata in *Alvey v. Alvey*, 225 Md. 386, 390, 171 A.2d 92 (1961):

> [A] judgment between the same parties and their privies is a final bar to any other suit upon the same cause of action, and is conclusive, not only as to all matters that have been decided in the original suit, but as to all matters which with propriety could have been litigated in the first suit, where the court had jurisdiction....

Under this definition, a plaintiff must assert all claims arising out of a particular transaction against a particular defendant or be barred from asserting them later. *Frontier Van Lines v. Md. B. & Tr. Co.*, 274 Md. 621, 624–25, 336 A.2d 778 (1975). While this Court has not had to confront the effect of res judicata on the assertion of counterclaims, the Court of Special Appeals has applied the broad definition to preclude a defendant from asserting counterclaims in a subsequent action that arose from a transaction involved in prior litigation. In *Felger v. Nichols*, 35 Md.App. 182, 370 A.2d 141 (1977), the plaintiff sued his lawyer for malpractice. Previously, the lawyer had sued the client for a fee and the client had defended on grounds of the lawyer's excessive fees and inadequate service. Because the lawyer's skill, fidelity, and diligence were at issue and litigated in the fee suit, the court's determination in the earlier suit barred the latter suit for inadequate legal representation dependent on those same determinations. *Id.* at 185, 370 A.2d 141. Quoting from this Court's decision in *LeBrun v. Marcey*, 199 Md. 223, 227, 86 A.2d 512 (1952), the *Felger* court held that direct judgment by estoppel applies:

> [N]ot only as to every matter which was offered and received to sustain *or defeat* the claim or demand, but as to any other admissible matter which might have been

offered for that purpose.[10] 35 Md.App. at 184, 370 A.2d 141.

In another case very similar to the situation Appellant would face if she attempted to bring her counterclaim for damages separately, the plaintiffs in *Singer v. Steven Kokes, Inc.*, 39 Md.App. 180, 384 A.2d 463 (1978) were precluded from suing the builder of their house for negligence and breach of warranty because the builder had previously brought suit to foreclose on a mechanic's lien, and in that action the plaintiffs had been allowed credit for building defects. In finding that res judicata barred the suit for additional defects the court said:

> [A] party must raise all defenses he has to a cause of action and once that action is concluded he cannot use a defensive matter as a basis for relief in a subsequent action between the parties.

> *Id.* at 182, 384 A.2d 463 (citing *Ashman v. Ashman*, 201 Md. 445, 450–51, 94 A.2d 257 (1953).[11]

In most cases, a counterclaim arising out of the same transaction involved in the plaintiff's suit will involve "defensive matter" and, thus, a defendant will be compelled to

---

**10.** This Court in *LeBrun* was quoting *Cromwell v. County of Sac*, 94 U.S. (4 Otto) 351, 352, 24 L.Ed. 195 (1876).

**11.** In recognition of the apparent incongruity of requiring a defendant to raise all counterclaims in a pending action and the absence of a provision for compulsory counterclaims in the Rules, the court went on to say that:

> If a matter is not the nature of a defense but constitutes a counterclaim, the general rule is that the party is not required to assert the claim unless the subject matter is such an integral part of the issue being litigated that a judgment would necessarily negate the existence of facts essential to its maintenance. 39 Md.App. 182–83, 384 A.2d 463.

Professors Bourne and Lynch suggest that the breadth of this application of the doctrine of res judicata, coupled with the merger of law and equity, operate to preclude a defendant from withholding for future litigation any issues other than those permitted as a part of a permissive counterclaim under federal practice, and that the net effect is to mandate certain counterclaims. R. Bourne and J. Lynch, *supra*, 14 U.Balt.L.Rev. at 10. We need not address that contention in this case.

raise it in the plaintiff's suit. To compel a defendant to raise his legal counterclaim in an equitable action, while at the same time finding he has waived his right to jury trial on the legal claim, may unconstitutionally deprive him of a jury trial. We hold that a trial court may not deny a defendant his right to a jury trial on the legal issues presented by his counterclaim simply because that counter-claim is raised in an equitable action. We are constitution-ally required to "inviolably preserve" the right of trial by jury in actions at law, and so "where both legal and equitable issues are presented in a single case, 'only under most imperative circumstances ... can the right to a jury trial of legal issues be lost through prior determination of equitable claims.' " *Dairy Queen v. Wood, supra,* 369 U.S. at 472–73, 82 S.Ct. at 897 (quoting *Beacon Theatres, supra,* 359 U.S. at 510–11, 79 S.Ct. at 957).

The Supreme Court did not purport to remove all discre-tion from a trial court to deny a jury trial demand, although it certainly narrowed that discretion.[12] As the Fifth Circuit Court of Appeals said in *Thermo-Stitch, supra,* 294 F.2d at 491 n. 12, "the equitable, non-jury procedure may be used in such cases only if use of the jury trial itself will in some way obstruct a satisfactory disposition of the equitable claim."

█ Applying these principles to the case before us, we conclude that the trial judge erred in refusing Higgins' demand for a jury trial on the issue of breach of contract

---

**12.** The *Beacon Theatres* Court explained:

If there should be cases where the availability of declaratory judg-ment or joinder in one suit of legal and equitable causes would not in all respects protect the plaintiff seeking equitable relief from irreparable harm while affording a jury trial in the legal cause, the trial court will necessarily have to use its discretion in deciding whether the legal or equitable cause should be tried first. Since the right to jury trial is a constitutional one, however, while no similar requirement protects trial by the court, that discretion is very narrowly limited and must, whenever possible, be exercised to preserve jury trial.

359 U.S. at 510, 79 S.Ct. at 956.

raised by her counterclaim. The issues of whether Barnes had breached the contract by failing to construct the new building in accordance with the plans and specifications, and of the amount of damages suffered for any breach found, were clearly the type of legal issues historically subject to trial by jury. Moreover, the issues were common to the claim and counterclaim. The court could not enter a final judgment for specific performance without first determining the amount of the mortgage it would order Higgins to deliver, and could not determine that amount without first deciding Higgins' right to recoupment, if any, flowing from Barnes' failure to construct the building in accordance with the contract. These issues were specifically raised by Higgins' answer and counterclaim, and there has never been any suggestion that the issues were frivolous.

Higgins' demand for a jury trial should have been granted as to the issues raised by her answer and counterclaim, and those issues should have been tried first. After a jury had determined Higgins' entitlement, if any, to damages resulting from deficiencies in construction, the trial judge should have determined whether specific performance was appropriate.[13] The judgment entered by the court would reflect an adjustment in accordance with the finding of the jury, thereby giving full effect to Higgins' right to a jury trial.

Upon remand, the issues of deficient construction and the adjustment to which Higgins may thereby be entitled shall be submitted to a jury, after which the trial judge shall consider the equitable issues of reformation of the contract (if amendment is sought) and the claim for specific performance,[14] and enter an appropriate judgment.

---

**13.** Had Barnes' complaint included a claim for reformation based upon the alleged mistake of the scrivener, the trial judge also would have determined that claim, because reformation is an equitable procedure.

**14.** The trial judge previously determined, after consideration of the appropriate equitable principles, that specific performance would be

JUDGMENT OF THE CIRCUIT COURT FOR CARROLL COUNTY VACATED; CASE REMANDED TO THAT COURT FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION; COSTS TO BE PAID BY RESPONDENTS.

appropriate in this case. Although it appears unlikely that additional proceedings will produce facts justifying a change in that decision, we do not foreclose the ordinary exercise of the trial judge's discretion in that matter.