712 A.2d 1

GOLDMAN, SKEEN & WADLER, P.A.

v.

COOPER, BECKMAN & TUERK, L.L.P., et al.

No. 1038, Sept. Term, 1997.

Court of Special Appeals of Maryland.

May 21, 1998.

30

34

William J. Murphy (Robert T. Shaffer, III, John J. Connolly and Murphy & Shaffer, on the brief), Baltimore, for appellant.

Andrew Jay Graham (John A. Bourgeois and Kramon & Graham, P.A., on the brief), Baltimore, for appellees.

Argued before DAVIS, THIEME and KENNEY, JJ.

THIEME, Judge.

Appellees/cross-appellants Cooper, Beckman & Tuerk, L.L.P. (CBT) and Levy, Phillips & Konigsberg, R.L.L.P. (LPK) filed a six-count complaint against appellant/cross-ap-

pellee Goldman, Skeen & Wadler, P.A. (GSW), as well as Harry Goldman, Jr., pertaining to a series of fee-sharing agreements among the parties. The jury returned a special verdict finding three of four such contracts to remain in effect and concluding that each of the three law firms was liable for breach. The jury awarded CBT and LPK one dollar each and similarly awarded one dollar to GSW. The court entered one judgment on the verdict for the breach of contract claims and a separate judgment declaring the three contracts to remain in effect and awarding a total of $5,691,599.60 to CBT and LPK, a sum "representing [their] contractual share of the total fees." GSW filed a motion to alter or amend the declaratory judgment, a motion for recusal, and a conditional motion for a new trial on the continuing enforceability of the three contracts. CBT and LPK then filed a motion for summary judgment, which also requested judgment notwithstanding the verdict. The court amended the declaratory judgment to indicate additionally that CBT and LPK owed $90,367.69 to GSW, even though no party had requested such an amendment. All other motions were denied. This appeal ensued.

On appeal, GSW presents the following questions, which we have recast:

1. Whether the circuit court improperly excluded expert testimony and other evidence on the Maryland Lawyers' Rules of Professional Conduct and predecessor ethical rules.

2. Whether an Order compelling a law firm to remit to other lawyers seventy-five percent of attorney's fees obtained in on-going cases improperly compels the firm to breach its ethical obligations to clients.

3. Whether the circuit court erred by permitting appellees to introduce evidence of a prior contract dispute between GSW and another attorney.

4. Whether the circuit court erred by refusing to instruct the jury on principles of contract termination.

5. Whether the circuit court erred by refusing to instruct the jury on the Statute of Limitations.

6. Whether the circuit court improperly excluded file memoranda of disputed conversations.

7. Whether the trial court's declaratory judgment awarding money damages violated GSW's constitutional right to trial by jury or constituted an improper attempt at additur or reformation of a jury verdict.

8. Whether the trial judge erred by failing to recuse himself from post-trial proceedings.

CBT and LPK cross-appeal on one initial issue: "Whether it was error to award GSW a remedy when GSW explicitly disclaimed any interest therein." Should this court find error in the declaratory judgment's monetary awards to CBT and LPK, then cross-appellants present two further questions:

1. Did the circuit court err by dismissing cross-appellants' claims for conversion and punitive damages?

2. Did the circuit court err by denying cross-appellants' motion for summary judgment and entering the jury's award of nominal damages?

For reasons set forth below, we will affirm the breach of contract judgment, but we must reverse the declaratory judgment's monetary awards against GSW and vacate and remand the declaratory judgment in all other respects.

### FACTS

In the mid–1970's, Mr. Goldman represented several clients who belonged to Local 24 of the International Union of Marine and Shipbuilding Workers of America (IUMSWA) and were employed at the Key Highway Shipyard of Bethlehem Steel in Baltimore City. Mr. Goldman was a partner in Goldman & Skeen, P.A., the predecessor in interest to GSW, but for ease we shall refer to the two firms collectively as GSW. When a study of the Key Highway shipyard workers was conducted in the late 1970's, it revealed a high rate of asbestos disease. The result, as it pertains to this case, was that Local 24

retained GSW to pursue what were estimated to be 150 asbestos-related personal injury claims.

Mr. Goldman knew, however, that his firm would not be able to handle the complexity and expense of prosecuting all of these cases on its own, so even prior to receiving the offer to represent the Local 24/Key Highway plaintiffs, Mr. Goldman approached another attorney, Gerald H. Cooper, of CBT. The two entered into the first of their fee-sharing agreements, memorialized in a signed document of 18 September 1979. Under the terms of the agreement, the two firms would share equally the work, the expenses, and the fees generated by the Local 24/Key Highway asbestos litigation. The agreement covered all asbestos litigation, other "toxic tort work, such as lead poisoning," and all work that would derive from such representation, with certain specific exceptions.

Within a few months, the first of many disputes arose between the two parties. CBT believed that the representation called for still more resources than the two parties could provide and demanded that additional counsel be brought in. GSW initially opposed such a move, but eventually both GSW and CBT signed a second fee-sharing agreement with Mr. Stanley J. Levy of Kreindler & Kreindler. (The latter firm is the predecessor to the LPK firm, and for ease we will refer to them collectively as LPK.) Under this second agreement, dated 18 April 1980, LPK would handle "the major burden" of the Local 24/Key Highway asbestos representation and advance most of the costs in return for fifty percent of all fees generated therefrom. CBT and GSW would share equally the other half of the fees. The agreement also allocated among the parties responsibility for certain specific tasks and expenses, but it was silent as to any derivative representation.

Over a year later, another pair of fee-sharing agreements was executed. One of these agreements was memorialized in a document dated 4 November 1981 and signed by only GSW and CBT. The agreement pertained to their joint representation of a different set of asbestos litigation clients who were members of Local 33 of the IUMSWA, employed at Bethle-

hem Steel's Sparrows Point Shipyard. We refer to this agreement as "Local 33/Sparrows Point." GSW and CBT agreed to share equally the fees derived from the representation "after payment of the net fee of other litigation counsel."

The fourth and final fee-sharing agreement is memorialized in a document dated 5 November 1981 and signed by GSW, CBT, and one Bernard G. Link, Esq. Mr. Link was general counsel to union Local 31 from the Maryland Shipbuilding and Drydock Company. The agreement called for joint representation of Local 31 members in asbestos litigation, with LPK acting as lead counsel in return for fifty percent of the fees. Mr. Link would receive twenty-five percent of all fees, and CBT and GSW would collectively receive the remaining twenty-five percent, as local counsel.

Mr. Goldman's relations with the other parties were strained from the outset. Mr. Goldman complained that CBT was violating the agreements by deducting overhead expenses from GSW's portion of fees and by failing to disclose fees generated from "spin-off" representation arising out of the Local 24/Key Highway cases. LPK and CBT considered Goldman difficult to deal with and derelict in his participation in this litigation. They tended to adopt the strategy of ignoring his frequent complaints, moving ahead with the litigation, and sending Mr. Goldman bills and checks according to their understanding of the agreements.

As this case is primarily concerned with the Local 33/Sparrows Point agreement, we note some further facts brought out at trial regarding this agreement. Mr. Goldman drafted the two-paragraph letter memorializing the agreement. According to him, this fee-sharing agreement never concerned LPK at all but left CBT and GSW free to associate with whatever "other litigation counsel" they saw fit to bring in. In fact, Mr. Goldman claimed that he specifically excluded LPK from the agreement because he was so dissatisfied with its performance in the Local 24/Key Highway cases. LPK and CBT apparently believed that LPK was, at the very least, the intended third-party beneficiary of the agreement. At some point

during the late 1980's, GSW made some demands of CBT for reimbursement of expenses in Local 33/Sparrows Point representation. CBT refused to pay, allegedly because GSW already owed them an even greater sum arising from expenses in cases covered by other agreements. In April of 1989, Mr. Goldman met with Carl E. Tuerk, Jr., of CBT in a hotel dining room to discuss their disputes. According to Mr. Goldman, the meeting ended with an agreement to terminate the Local 33/Sparrows Point agreement, but according to Mr. Tuerk and CBT, it was merely another opportunity for Mr. Goldman to "blow off steam," and it did not result in a modification or termination of the Local 33/Sparrows Point Agreement. After that time, GSW associated with other counsel to pursue the Local 33/Sparrows Point claims.

In August 1989, Mr. Goldman notified CBT of some settlements that had been obtained in Local 33/Sparrows Point cases and informed CBT that he would hold a portion of the funds in escrow pending the resolution of their financial disputes. No response was made with regard to these funds, and Mr. Goldman eventually withdrew them. By 1994, several more Local 33/Sparrows Point cases had settled for considerable sums, and CBT contacted GSW regarding its share, at which point Mr. Goldman asserted that CBT no longer had any right to any such funds. The instant suit ensued eighteen months later.

At trial, the jury returned a special verdict indicating the following. The first Local 24/Key Highway agreement between just CBT and GSW was no longer in effect and neither party had breached the agreement. The second Local 24/Key Highway agreement remained in effect and both CBT and LPK had breached that agreement and were liable to GSW for one dollar in damages. The Local 33/Sparrows Point agreement also remained in effect, and GSW had breached that agreement. GSW was liable to CBT for one dollar in damages and liable to LPK for one dollar in damages. The final Local 31 agreement remained in effect, but neither party had breached it. The court entered two final judgments in the case. In a Final Judgment on Breach of Contract Claims, the

court entered judgment on the verdicts, including the three damages awards. In a contemporaneous Final Judgment and Order Granting Declaratory Relief, the court declared the status of the four agreements in accord with the jury's verdict. The court also ordered GSW to remit $1,830,942.07 to CBT and to remit $3,861,657.53 to LPK, these sums "representing [CBT's and LPK's] contractual share of legal fees received by" GSW to the date of the jury verdict. Further facts will be set forth where necessary for particular discussions.

## *DISCUSSION*

### MLRPC Rule 1.5(e) and *Post v. Bregman*

We first take up appellant GSW's claim that the lower court erred by excluding from the trial all matters pertaining to the Maryland Lawyers' Rules of Professional Conduct (MLRPC) and earlier ethical rules. Appellant requests we order a new trial limited to the issue of whether the contracts remain in effect. (GSW does not request and has never requested any relief from the breach of contract judgment below.) Prior to trial, GSW gave notice of its intent to call an expert witness in legal ethics to testify on the ethical rules governing fee-sharing agreements, including MLRPC Rule 1.5(e) and the predecessor rule in effect at the time the agreements were made. GSW also sought to have clients testify to factual matters relevant to these ethical rules, to introduce the text of Rule 1.5(e) and its predecessor, and to instruct the jury thereon. The court sustained objections to all such evidence and denied the requested instruction.

This Court took up the issue of the effect of MLRPC Rule 1.5(e) on a suit for breaching a fee-sharing agreement in *Post v. Bregman*, 112 Md.App. 738, 686 A.2d 665 (1996), decided just three weeks before trial in this case. We ruled that Rule 1.5(e) does not constitute a judicial precedent and that it cannot be read into a fee-sharing contract. Relying on our decision, the circuit court granted a motion *in limine* preventing GSW from presenting any evidence or defense based on that ethical rule.

On 15 January 1998, however, the Court of Appeals reversed this Court on that very point. *Post v. Bregman,* 349 Md. 142, 707 A.2d 806 (1998). The Court began its analysis by noting that the question of whether ethical rules are enforceable outside of disciplinary proceedings stems from the larger question of whether such rules constitute public policy. *Id.* at 161–62, 707 A.2d at 815. Unlike some states' rules which are promulgated by a local bar association, Maryland's rules of legal ethics are adopted by the Court of Appeals "in the exercise of its inherent Constitutional authority to regulate the practice of law." *Id.* at 163, 707 A.2d at 816. The Court also pointed out that these rules thoroughly regulate "virtually every aspect of the practice of law." *Id.* "Unquestionably, so thorough a regulation of an occupation and professional calling, the integrity of which is vital to nearly every other institution and endeavor of our society, constitutes an expression of public policy having the force of law." *Id.* The Court concluded, "MLRPC constitutes a statement of public policy by the only entity in this State having Constitutional authority to make such a statement, and it has the force of law." *Id.* at 164, 707 A.2d at 816.

As for the crucial question of whether such rules could be raised as a defense to an action on a contract, the Court first noted multiple instances in which the appellate courts of Maryland have given at least some effect to various ethical rules outside of the disciplinary context. The rules have been referred to in determining whether an attorney is a fiduciary for certain liability purposes, *Advance Fin. Co. v. Trustees of the Clients' Sec. Trust Fund,* 337 Md. 195, 652 A.2d 660 (1995), whether a Public Defender must release client information under the Public Information Act, *Harris v. Baltimore Sun,* 330 Md. 595, 625 A.2d 941 (1993), whether the goodwill of a legal practice may constitute marital property, *Prahinski v. Prahinski,* 321 Md. 227, 582 A.2d 784 (1990), whether an attorney should be disqualified, *Harris v. David S. Harris, P.A.,* 310 Md. 310, 529 A.2d 356 (1987), and whether an attorney harbored criminal intent in receiving stolen goods from a client. *Cardin v. State,* 73 Md.App. 200, 533 A.2d 928

(1987). The Court also noted with approval cases in which the analogous ethical rule of five other states had been applied to alter the effect of an attorneys' fee-sharing agreement. The Court held:

> MLRPC 1.5(e) does constitute a supervening statement of public policy to which fee-sharing agreements by lawyers are subject, and [ ] the enforcement of Rule 1.5(e) is not limited to disciplinary proceedings. It *may* extend to holding fee-sharing agreements in clear and flagrant violation of Rule 1.5(e) unenforceable. . . .

We highlight the word "may" for a reason. Although a fee-sharing agreement in violation of Rule 1.5(e) may be held unenforceable, the Rule is not a *per se* defense, rendering invalid or unenforceable otherwise valid fee-sharing agreements because of rule violations that are merely technical, incidental, or insubstantial or when it would be manifestly unfair and inequitable not to enforce the agreement. *Id.* at 168, 707 A.2d at 818–819. The Court concluded with words of guidance and a remand:

> When presented with a defense resting on Rule 1.5(e), the court must look to all of the circumstances—whether the rule was, in fact, violated, and if violated (1) the nature of the alleged violation, (2) how the violation came about, (3) the extent to which the parties acted in good faith, (4) whether the lawyer raising the defense is at least equally culpable as the lawyer against whom the defense is raised and whether the defense is being raised simply to escape an otherwise valid contractual obligation, (5) whether the violation has some particular public importance, such that there is a public interest in not enforcing the agreement, (6) whether the client, in particular, would be harmed by enforcing the agreement, and, in that regard, if the agreement is found to be so violative of the Rule as to be unenforceable, whether all or any part of the disputed amount should be returned to the client on the ground that, to that extent, the fee is unreasonable, and (7) any other relevant considerations. We view a violation of Rule 1.5(e), whether regarded as an external defense or as incorporated into the

contract itself as being in the nature of an equitable defense, and principles of equity ought to be applied.

As we indicated, having declared Rule 1.5(e) inapplicable, the circuit court never considered these matters. It must now do so.

*Id.* at 169–170, 707 A.2d at 819 (footnote omitted).

█ The applicability of *Post* to the instant case is rendered somewhat more attenuated by the fact that appellant does not here challenge the breach of contract judgment against him but only the declaratory judgment. *Post* only explicitly concerns use of MLRPC Rule 1.5(e) as an equitable defense to a breach of contract suit. The reasoning of *Post,* nevertheless, appears equally applicable to an action for a declaratory judgment on the continuing enforceability of a contract. An equitable defense in a contract suit does not render the contract void but merely unenforceable at law. *Creamer v. Helferstay,* 294 Md. 107, 113–15, 448 A.2d 332, 335–36 (1982). This is precisely the point at issue in an action seeking a declaration that a contract remains enforceable. We find that the *Post* defense may be available to GSW here.

*Post* clearly contemplates, however, that a defense based on the MLRPC may not be available in every circumstance. The several factors set forth for use in determining whether the defense is available call upon a court to exercise its equitable discretion. On the one hand, the Court of Appeals admitted that "it would indeed be anomalous to allow a lawyer to invoke the court's aid in enforcing an unethical agreement when that very enforcement, or perhaps even the existence of the agreement sought to be enforced, would render the lawyer subject to discipline." *Post,* 349 Md. at 168, 707 A.2d at 818 (paraphrasing *Scolinos v. Kolts,* 37 Cal.App.4th 635, 640, 44 Cal. Rptr.2d 31 (1995)). On the other hand, the Court also noted in a footnote the view of the Delaware Supreme Court: "As a matter of public policy, this Court will not allow a Delaware lawyer to be rewarded for violating Delaware Lawyers' Rule of Conduct 1.5(e) by using it to avoid a contractual obligation." *Id.* at 169 n. 6, 707 A.2d at 819 n. 6 (quoting *Potter v. Pierce,*

688 A.2d 894, 897 (Del.1996)). We believe these contrary characterizations of the proper role of the courts in settling attorneys' fee-splitting disputes are best interpreted as opposite ends of an equitable spectrum, with room for gradation in between. According to *Post*, the lower court in this case possesses the discretion to place limitations on GSW's use of MLRPC Rule 1.5(e) as a defense in the declaratory judgment action and may even bar such a defense entirely if the equities call for such a limitation.

■ The lower court ruled *in limine* that MLRPC Rule 1.5(e) did not apply to the contracts at issue and precluded GSW from pursuing any line of defense based on that rule. The record extract indicates that the circuit judge based his ruling on pure legal grounds, with strong reliance on our own, superceded *Post* opinion. The lower court excluded the evidence without ever taking into consideration any of the factors subsequently outlined by the Court of Appeals. Since our opinion in *Post* is reversed and since the lower court has yet to examine the appropriate factors, its decision to exclude the evidence was in error.

■ Of course, to warrant a reversal, the lower court's rulings on the evidence and the jury instructions must not only be erroneous, but also prejudicial. *Wilhelm v. State Traffic Safety Comm'n*, 230 Md. 91, 102, 185 A.2d 715, 720 (1962) (jury instructions); *Rotwein v. Bogart*, 227 Md. 434, 437, 177 A.2d 258, 260 (1962) (evidence). Appellant was clearly prejudiced by the lower court's failure to consider whether to allow his defense based on MLRPC Rule 1.5(e), but we cannot find that appellant was prejudiced by the trial until the lower court determines whether appellant may present this defense. We will therefore vacate the declaratory judgment and remand for the trial court to balance the equities and rule on whether the defense should be allowed. If the court determines that appellant should have been allowed to present any material aspect of this defense, then it should order a new trial limited to the issue of the continuing enforceability of the contracts.

 Since, however, the lower court could choose to exercise the furthest breadth of its discretion and foreclose completely GSW's proffered defense, we will address the remainder of the issues presented. The second claim of error asserted is that the trial court's declaratory judgment violates MLRPC Rule 1.5(e) by forcing appellant to share fees with attorneys who did not earn their share and without the consent of the clients. In most respects, this argument is a minor variation on the one we have just addressed. The instant declaratory judgment will stand or fall on remand according to whether the defense based on the MLRPC is allowed. That is not to say, however, that any MLRPC rule can trump an otherwise valid court order, as appellant's argument insinuates. The MLRPC governs lawyers, not courts. If a court, in the exercise of its equitable discretion, orders an attorney to abide by a contractual obligation that violates the MLRPC, the order is valid and the ethical matter rests among the attorney, the client, and the disciplinary authority.[1] Appellant asserts that the instant declaratory judgment violates ethical duties to clients and cites to the law that declaratory judgments "may not prejudice the rights of any person not a party to the proceeding." Md.Code Ann., Cts. & Jud. Proc. § 3–405(a)(2) (1995). Even if the clients' rights are prejudiced by a declaration regarding a fee-sharing agreement, the prejudice is attributable to the agreement and not the declaration of the respective legal rights of the attorneys.

### Appellant's claims of trial error

 Appellant GSW alleges the court erroneously admitted evidence of prior fee disputes involving appellant and other attorneys and asks that we grant a new trial on the issue of the continuing enforceability of the contracts. Appellant ar-

---

**1.** *Accord Caplin & Drysdale, Chartered v. United States,* 491 U.S. 617, 632 n. 10, 109 S.Ct. 2646, 2656 n. 10, 105 L.Ed.2d 528, 545 (1989) ("The fact that a federal statutory scheme ... is at odds with model disciplinary rules or state disciplinary codes hardly renders the federal statute invalid.").

gues that the evidence was not relevant to any issue at trial and that it permitted the jury to make the forbidden inference that GSW acted in accordance with its character as a "serial contract breacher." Assuming for the moment that the evidence was erroneously admitted, however, we cannot find any prejudice to appellant under the circumstances. Evidence indicating the likelihood of appellant's breach would be prejudicial as to the breach of contract claim, but appellant does not attack the breach of contract judgment. Appellant attacks the declaration of the continuing enforceability of the fee-sharing agreements, and the issue of breach is not directly relevant thereto. Even under the theory that a material breach may be the catalyst of termination, any inference that appellant breached could only support its position as to the continuing enforceability of the contracts. Since appellant has shown no prejudice, its claim fails.

Appellant next claims that the court erred in refusing to instruct the jury on the subject of contract termination, and he requests we reverse the declaratory judgment and remand for retrial limited to the continuing enforceability of the contracts. The trial court did instruct the jury on some aspects of the formation and termination of contracts. The proffered jury instructions provided:

> If the parties did not agree on the duration of their contract, the contract runs for a reasonable time. A contract may not exist in perpetuity in the absence of an express provision.

> A contract of unspecified duration may be terminated by either party at any time, with or without the consent of the other party.

Appellant claims that such instructions are proper because none of the contracts at issue had any express termination date.

▮▮▮▮ We agree that it is error to refuse a legally correct instruction that is supported by the evidence. *Sergeant Co. v. Pickett,* 285 Md. 186, 194, 401 A.2d 651, 655 (1979). As for the first instruction, it is a correct statement of the law. In the

absence of a specific provision, a reasonable duration will be implied. *Evergreen Amusement Corp. v. Milstead,* 206 Md. 610, 617, 112 A.2d 901, 904 (1955). The instruction is unwarranted, however, because there is no evidence suggesting that the duration of the contracts had already run. In determining the reasonable duration of a contract, reference should always be made to the subject matter of the contract. *Pumphrey v. Pelton,* 250 Md. 662, 665, 245 A.2d 301, 303 (1968). The subject matter of each of the three contracts is a limited and discrete set of asbestos-related personal injury claims. The implied duration, therefore, must at least be the duration of that set of claims. The evidence was overwhelming at trial that claims subject to the agreements were still on-going, and GSW has pointed to no evidence to the contrary.[2] The first instruction was therefore unwarranted.

The second proffered instruction is also inapplicable here, because the rule it states only applies where the parties have actually agreed upon indefinitely continuous performance. *See Kiley v. First Nat'l Bank,* 102 Md.App. 317, 335, 649 A.2d 1145, 1153 (1994). Such is not the case here. Whether by operation of the Statute of Limitations or by way of final appellate review, the asbestos claims governing the duration of the agreements will terminate some day. While none of the parties may have been able to guess the exact date on which the contracts would end, that does not mean the parties intended the contracts to be of indefinite duration. In support of its argument that the contracts are "of unspecified duration," GSW has pointed to the fact that the contracts contain no express termination date. This argument ignores, however, the principle stated in GSW's first proffered jury instruction: the absence of a termination provision gives rise to an implied reasonable duration, not perpetual duration. There was no error in refusing the instructions.

---

2. Although the parties have not raised the issue, we are aware that the second Local 24/Key Highway agreement arguably may have covered "spin-off" litigation beyond the union asbestos claims. We need not be concerned with this, however, because the primary litigation was still on-going as of the instant trial.

**48**

 Appellant GSW next claims that the lower court erred by refusing to allow a defense based on the Statute of Limitations and requests a retrial limited to the continuing enforceability of the contracts. In support of this claim of error, appellant argues that both CBT and LPK were at least on inquiry notice of their contract claims against GSW well over three years prior to the initiation of suit. We pause to make clear the nature of the argument. Appellant does not argue that the breach of contract judgment should be vacated, nor is appellant arguing that the declaratory judgment action is itself time-barred. Appellant is not here attacking the monetary awards contained in the declaratory judgment. The argument is that it was prejudicial error to preclude GSW from raising the Statute of Limitations as a defense to the declaration of the continuing enforceability of the contracts. This is not a viable defense. The defense of limitations, when successful, renders an existing contractual debt or duty unenforceable at law; it does not extinguish that duty or rescind that contract. *Jenkins v. Karlton,* 329 Md. 510, 531, 620 A.2d 894, 904 (1993); *Frank v. Wareheim,* 179 Md. 59, 65, 16 A.2d 851, 853 (1940). In this case, where the contracts were all continuing in nature, a declaration that the contracts remain enforceable is completely independent of any question of whether a claim on a prior existing contractual duty is time-barred. All of the prior existing duties were the subject of the breach of contract claims. The declaratory judgment did not pertain to any of these existing duties but only to those future duties that may arise under the on-going "enforceable" contracts. As such, the declaratory judgment does not pertain to any remedy or recovery at all and cannot be time-barred here since it pertains only to future-arising duties. Appellant's argument seems to treat the limitations defense as if it were the equivalent of one party's acquiescence to another party's recission, a theory never raised here or below. The claim fails.[3]

---

3. We have resolved this issue without addressing the parties' arguments about when a cause of action for breach of a fee-sharing agreement

Appellant GSW's last assertion of trial error is that the court erred by refusing to admit two "critical file memoranda" written by Mr. Goldman and again requests only a new trial on the continuing enforceability of the contracts. The first of these two memoranda contains Mr. Goldman's notes concerning a disputed phone conversation allegedly occurring in December of 1987. Mr. Goldman alleged that he informed Mr. Levy of LPK during that phone conversation that LPK had no interest in the Local 33/Sparrows Point agreement. Mr. Levy denied that such a phone conversation ever occurred. Other testimony established that Mr. Levy called Mr. Tuerk of CBT on that same day to request a copy of that same agreement. Appellant alleges the memorandum of this disputed phone call should have been admitted under Maryland Rule 5–802.1 as a past recollection recorded and as a consistent statement offered to rebut an implied charge of fabrication. The second file memorandum concerns similar circumstances and allegations regarding a phone conversation of 30 March 1988.

The record reflects that the first memorandum was offered for admission, a hearsay objection was made, and appellant argued only the past recollection recorded exception. The judge sustained the exception and then refused to allow Mr. Goldman to read the memorandum to the jury, but he did allow the memorandum to be used to refresh Mr. Goldman's recollection. The second memorandum was never offered into evidence at all, and appellant never requested that it be read to the jury. It was merely used for recollection refreshment purposes without objection. Appellant claims the judge should have admitted the two documents into evidence and

---

accrues. Appellees argued it did not accrue until GSW refused to share the fee, and GSW claims it accrued years prior when it allegedly put appellees on notice that it no longer considered itself bound by the agreement. No party has argued what effect, if any, MLRPC Rule 1.5(e) may have on this issue. That rule, as well as its predecessor, requires the fee be shared in proportion to the services actually performed. It may be that this rule causes a claim to accrue as soon as an attorney is aware that the work is not being shared in accordance with the anticipated fee division. This issue deserves further attention but is best left for an appropriate case.

that he should have at least allowed Mr. Goldman to read the memoranda to the jury.

Appellant has not made clear just how the information in the memoranda is at all relevant to the issue of the continuing enforceability of the Local 33/Sparrows Point contract, given our prior rulings on the Statute of Limitations and contract termination. Nevertheless, assuming some relevance, the claim fails on its merits. Maryland Rule 5–802.1 provides, in pertinent part:

> The following statements previously made by a witness who testifies at the trial or hearing and who is subject to cross-examination concerning the statement are not excluded by the hearsay rule:
>
> . . .
>
> (b) A statement that is consistent with the declarant's testimony, if the statement is offered to rebut an express or implied charge against the declarant of fabrication, or improper influence or motive;
>
> . . .
>
> (e) A statement that is in the form of a memorandum or record concerning a matter about which the witness once had knowledge but now has insufficient recollection to enable the witness to testify fully and accurately, if the statement was made or adopted by the witness when the matter was fresh in the witness's memory and reflects that knowledge correctly. If admitted, the statement may be read into evidence but the memorandum or record may not itself be received as an exhibit unless offered by an adverse party.

These two provisions are not rules of automatic admissibility; they are only exceptions to the hearsay bar.

For failing to bring to the lower court's attention the Rule 5–802.1(b) hearsay exception for prior consistent statements, GSW has waived any appellate reliance thereon. As for Rule 5–802.1(e), the argument that the documents should have been admitted into evidence fails because they were offered by appellant and not by the adverse party as

required under the rule. As for the ruling that Mr. Goldman could use the memoranda to refresh his recollection but not read them to the jury, we find no prejudice to GSW therefrom. Mr. Goldman was permitted to use the two documents to refresh his recollection as he testified regarding each alleged phone conversation. We have compared the two memoranda with the relevant portions of the trial transcript, and we find that Mr. Goldman fully and completely related to the jury the substance of all pertinent statements contained in the memoranda. Moreover, the transcript reveals that Mr. Goldman used the memoranda for far more than merely refreshing his recollection, as opposing counsel and the court comment multiple times that he was improperly reading both memoranda to the jury. Having found no prejudice from the ruling, we reject this claim of error.

### Appellant's right to a jury trial

Appellant asks us to reverse the monetary awards contained in the declaratory judgment for violating appellant's right to a trial by a jury. At trial, the jury found that GSW had breached the Local 33/Sparrows Point fee-sharing agreement and awarded one dollar in damages to CBT and another dollar to LPK. The court entered a final judgment on this verdict. In a separate final order, the judge declared the respective rights of the parties regarding the contracts and ordered GSW to pay $1,830,942.07 to CBT and $3,861,657.53 to LPK, "representing [their] contractual share of fees." GSW alleges that these monetary awards violated its right to a jury trial. We agree.

Article 23 of the Maryland Declaration of Rights provides, in part:

> The right of trial by Jury of all issues of fact in civil proceedings in the several Courts of Law in this State, where the amount in controversy exceeds the sum of five hundred dollars, shall be inviolably preserved.

This provision locks into place the jury trial right as it existed at the time of our political separation from England. *Knee v.*

*Baltimore City Pass. Ry. Co.*, 87 Md. 623, 627, 40 A. 890, 892 (1898). Thus, in spite of the intervening merger of law and equity, the Maryland Constitution preserves the jury right "as to any legal issue holding the right to a jury trial in 1776." *Higgins v. Barnes*, 310 Md. 532, 542, 530 A.2d 724, 729 (1987).

An action for breach of contract is subject to the right to a jury trial. *Id.* at 551–52, 530 A.2d at 733–34. Where the amount of potential damages is at issue, the question of damages is also subject to the jury right. *Id.* This principle was clearly enunciated in *Gaither v. Wilmer*, 71 Md. 361, 18 A. 590 (1889). In that case, both contract liability and damages were before the jury as matters in dispute, but the jury verdict indicated only that the defendant was liable and failed to resolve the damages issue. The verdict was so recorded. On affidavit by plaintiff's counsel and over the objection of the defense, the court set the level of damages. The Court of Appeals found the original verdict to be "fatally defective" for failing to state the damages. "In all cases where the action is upon a contract or for damages, the verdict, if for the plaintiff, must be for an amount specified; otherwise the court cannot enter judgment upon it for any amount." *Id.* at 364, 18 A. at 591. Nor could the judge correct the verdict by resolving the damages dispute. The Court said, "[W]e cannot escape the legal conclusion that, by making the amendment complained of in this case, the Judge has invaded the exclusive province of the jury, and substituted his verdict for theirs." *Id.* at 368, 18 A. at 592.

GSW is constitutionally entitled to have a jury determine the level of damages in the instant breach of contract suit. A timely demand for jury trial on all issues was filed, and the damages issue was, in fact, submitted to the jury. The court entered judgment on the jury verdict and then entered another judgment granting an apparently inconsistent amount of monetary relief. The issue then arises whether it violates the jury right for the court to do so.

In approaching the question of whether a judge may award equitable relief different from or even inconsistent with a jury

verdict, we are guided by three prior cases: *Higgins, supra,* *Edwards v. Gramling Engineering Corp.,* 322 Md. 535, 588 A.2d 793, *cert. denied,* 502 U.S. 915, 112 S.Ct. 317, 116 L.Ed.2d 259 (1991); and *Hawes v. Liberty Homes, Inc.,* 100 Md.App. 222, 640 A.2d 743 (1994). In *Higgins,* the plaintiff brought suit seeking specific performance on a contract, and the defendant counterclaimed for damages and demanded a jury trial. The judge, believing the entire case to be primarily equitable, tried the case without a jury and found partially for the plaintiff. The Court of Appeals looked to analogous Federal law for guidance and determined that the defendant had the right to a jury trial on his counterclaim. In vacating the judgment, the Court offered instruction on how the case should have proceeded:

> After the jury had determined Higgins' entitlement, if any, to damages resulting from deficiencies in construction, the trial judge should have determined whether specific performance was appropriate. The judgment entered by the court would reflect an adjustment in accordance with the finding of the jury, thereby giving full effect to Higgins' right to a jury trial.

310 Md. at 552, 530 A.2d at 734 (footnote omitted). The negative implication of the Court's latter comment is that a judgment entered not in accordance with a jury finding would give less than full effect to one's right to a jury trial.

In *Edwards,* the plaintiff brought suit for wrongful denial of a corporate statement of affairs, and the corporation counterclaimed alleging, *inter alia,* breach of fiduciary duty, tortious interference with a business expectancy, and conversion. The corporation sought damages and injunctive relief on its counterclaims. Plaintiff demanded a jury trial on these counterclaims, and the jury returned a special verdict indicating plaintiff had breached his fiduciary duty but had neither tortiously interfered nor converted. The judge then dismissed the latter two claims and granted injunctive relief on the breach of fiduciary duty claim. The Court of Appeals affirmed on the grounds that it was possible to read the jury verdict as being consistent with the grant of injunctive relief.

In doing so, the Court noted with apparent approval the dual Federal directives that a judge resolving equitable claims "is without power to reach a conclusion inconsistent with that of the jury," 322 Md. at 543, 588 A.2d at 797 (quoting *Gutzwiller v. Fenik,* 860 F.2d 1317, 1333 (6th Cir.1988)), and "where there is a view of the case that makes the jury's answers to special interrogatories consistent, they must be resolved that way." *Id.* (quoting *Atlantic & Gulf Stevedores, Inc. v. Ellerman Lines,* 369 U.S. 355, 364, 82 S.Ct. 780, 786, 7 L.Ed.2d 798, 807 (1962)).

In *Hawes,* plaintiffs sought damages and specific performance on a contract. The jury returned a verdict for plaintiffs which, under the facts of the case, necessarily involved a conclusion either that the condition precedent to performance by defendants had been satisfied or that defendants had waived the condition. The trial court denied a motion for judgment not on the verdict, ruling that sufficient evidence supported the jury's conclusions. The court then filed an opinion and order denying the claim for specific performance. In that opinion, the court stated its conclusion that the condition precedent had not been satisfied and so there was no existing contract on which performance could be ordered. This Court reversed:

> In denying the motion for judgment NOV, the court found that there was sufficient evidence to support the jury's conclusion. In this circumstance, it was simply not permissible under the controlling Maryland law set forth in *Higgins* and *Edwards* for the circuit court to reach a contrary, inconsistent conclusion in ruling on the specific performance claim....
>
> ... The trial judge could have denied specific performance for reasons relating more particularly to the appropriateness of that remedy; he could have required appellants to choose between specific performance and damages, on the basis that they were inconsistent remedies; but he was not empowered to deny specific performance on the ground that appellees had not breached the contract after the jury concluded that they had.

100 Md.App. at 229–30, 640 A.2d at 746–47. In fact, this Court considered this error to be so "patently inconsistent with controlling principles" that we found an exception to the "law of the case" doctrine and reversed our own prior affirmance of the denial of specific performance. *Id.* at 230–32, 640 A.2d at 747–48.

■ In the instant case, there is no possible way to reconcile the jury's damages verdict with the court's order. The jury found only one breach on the part of GSW and awarded a total of two dollars in damages thereon. Appellees waived any argument that this verdict is not supported by the evidence because they failed to move for judgment at the close of all evidence. Thereafter, the judge awarded almost $5.7 million. The court explained the sum as "calculated per defense-supplied plaintiff exhibit 223," and "representing [CBT's and LPK's] contractual share of legal fees received [by Goldman, Skeen & Wadler, P.A.] from April 1989 to January 24, 1997, the date of [the jury] verdict." This is the very definition of expectation damages, the measure awarded for breach of contract. The court's explanation of its monetary awards thus tracks the pattern instruction on contract damages, which the court had earlier read to the jury: "The plaintiff and/or counterplaintiff is entitled to be placed in the same situation as if the contract had not been broken. The damages, therefore, are the profits that the plaintiff or the counter-plaintiff would have made had the contract been performed." Even the court's explanation of the time-frame governing its monetary computation matches that which governed the jury's. The verdict and the order can only be construed as performing the exact same calculation of expectation damages, or the amount of money GSW should have paid appellees under the terms of the contract during the period between the date of the breach and the date of the verdict.[4]

---

4. We say that the verdicts can "only" be construed this way because we must try to harmonize the apparent conflict as much as possible. For example, we reject appellant's suggested interpretation that, since plaintiffs' exhibit 223 includes fees derived from non-Local 33/Sparrows

It is a sheer mathematical impossibility to harmonize the jury's two-dollar result with the court's $5.7 million result. The judge's order cannot be sustained consistent with GSW's constitutional jury trial right.

Appellees have not suggested any alternate legal basis for the judge's order on which we can justify the inconsistency, even though appellant has offered possible alternate bases, each of them unsupportable. The order cannot be read as a reformation of the verdict, because only the form and not the substance of a verdict can be reformed. *Polkes & Goldberg Ins. v. General Ins. Co.*, 60 Md.App. 162, 167, 481 A.2d 808, 810 (1984). It cannot be read as an additur, because additur has never been viable in this State. *Millison v. Clarke*, 32 Md.App. 140, 143, 359 A.2d 127, 129 (1976). It cannot be a judgment notwithstanding the verdict, because no predicatory motion for judgment was made at the close of evidence. *Glover v. Saunders*, 252 Md. 102, 105, 249 A.2d 156, 158 (1969). Besides, appellees never filed motions under any of these theories, none of the theories comports with the court's own explanation of its actions, and the lower court actually entered a separate judgment for breach of contract *on the verdict.*

Although appellees concede the nature of the judge's order, they argue that the order should be upheld, nonetheless. Most of these arguments, however, fail for being entirely non-responsive to the constitutional issue presented. First, appellees argue that the awards of monetary relief as part of the declaratory judgment are entirely consistent with the evidence and with the jury's specific finding that a breach of contract occurred. Conveniently omitted from this view of the case is the only inconsistency with which we are here concerned: the measure of damages actually determined by the jury. Second, appellees argue that the factual findings made by the court in determining the money award of the declaratory judgment are adequately supported by the evidence. The flaw in this argument, as we have already pointed out, is that where legal

---

Point cases, the order awards contract damages on un-breached contracts.

and equitable issues are combined in a single case, as they are here, the equitable issues must bend according to the jury's resolution of the legal issues. It is no answer to say that each view of the irreconcilable conflict is supported by the evidence.

Next, appellees present two related arguments that purport to reconcile the conflict by showing that the judge and jury were performing inherently independent functions that may validly co-exist. Appellees maintain that while the jury awarded damages for a contract breach, the judge awarded relief on some other equitable grounds. Just what these alleged other grounds are, however, is far from clear. At one point, appellees inexplicably claim that the court was determining the appropriate remedy for a breach of fiduciary duty, even though the claim for breach of fiduciary duty was dismissed by the court before the case went to the jury. Appellees also maintain that the nature of the money awards was not "contract damages" but some other equitable relief. They never really decide what that other relief might be. In the four pages of their brief dedicated to this argument, the appellees variously describe the nature of the award as:

 —an equitable declaration and order that [Mr.] Goldman remit to them the share of the partnership monies which he had collected and to which they were entitled under the terms of the joint venture;

 —declaratory relief by way of monetary and other relief;

 —specific monetary relief; and

 —specific performance of the contracts.

We must reject the notion that the court was not awarding relief for a breach of contract. Not only does the order state on its face that the money represents on-the-contract recovery, but in closing arguments to the jury, appellees claimed entitlement to precisely the same dollar amounts as *damages* from GSW's *breach of contract*.

The name-game played by appellees fails at a more basic level, however. The jury right attaches to an issue if that issue held the right to a jury trial in 1776, regardless of what name or label is assigned to the issue today. A judge is

simply precluded from awarding any relief, equitable or legal, which is inconsistent with the jury's verdict. Even if all claims and counter-claims in this suit had sounded entirely in equity, the jury right would still have attached to those claims which "historically would have been filed on the law side of the court." *Hashem v. Taheri*, 82 Md.App. 269, 272, 571 A.2d 837, 839 (1990). *See also Simler v. Conner*, 372 U.S. 221, 223, 83 S.Ct. 609, 611, 9 L.Ed.2d 691, 693 (1963) ("The fact that the action is in form a declaratory judgment case should not obscure the essentially legal nature of the action."); *Dairy Queen, Inc. v. Wood*, 369 U.S. 469, 477–78, 82 S.Ct. 894, 900, 8 L. Ed.2d 44, 51 (1962) ("[T]he constitutional right to a jury trial cannot be made to depend upon the choice of words used in the pleadings.").

Appellees finally make a half-hearted attempt to challenge the conclusion that all legal issues are constitutionally required to be decided pursuant to the jury trial right. In support, appellees have cited two cases in which they assert the Court of Appeals has permitted legal issues to be decided by an equity court. *Wilkins v. Anderson*, 172 Md. 700, 191 A. 433 (1937); *Chase v. Gray*, 134 Md. 619, 623, 107 A. 537, 538 (1919). According to appellees, these cases indicate that the lower court had equitable authority to award the instant monetary relief. *Chase* is distinguishable in that it only discusses the jurisdiction of courts of equity and never mentions the jury trial right. *Wilkins*, which apparently is even more distinguishable, is an unreported opinion and therefore is neither binding precedent nor persuasive authority. Md. Rule 8–114(a). In any event, both cases arose well before the merger of law and equity, in a time when a chancellor's "cleanup" powers to decide ancillary legal issues was the source of some concern that the right to a jury trial was being eroded. *See Higgins*, 310 Md. at 541, 530 A.2d at 728. In light of the merger of law and equity, such precedents ought not distract a court from determining the scope of the right to a jury trial in accordance with constitutional principles.

Because the lower court's monetary awards against GSW cannot be reconciled with the jury's verdict, we will reverse

the declaratory judgment with respect to these awards. Appellees have argued that, should the monetary awards against GSW be found to be in error, the appropriate remedy would be to set aside the jury verdict and order a new trial on all issues. We fail to see why this would be remotely appropriate. The error arises in the declaratory judgment; it does not infect the trial, the verdict, or the breach of contract judgment.

## Motion to recuse

Appellant next argues the trial judge erred by failing to recuse himself from post-trial proceedings. Appellant does not ask us to vacate or reverse any particular judgment or ruling due to this alleged bias but requests only that we preclude the judge from participating in any further proceedings on remand. Appellant alleges that the judge's conduct throughout the course of the litigation "suggested that he harbored a personal bias."

Under Canon 3 C of the Maryland Code of Judicial Conduct, Maryland Rule 16–813:

(1) A judge should not participate in a proceeding in which the judge's impartiality might reasonably be questioned, including but not limited to instances where:

(A) the judge has a personal bias or prejudice concerning a party. . . .

A party wishing to recuse a judge for personal bias must overcome a strong presumption of judicial disinterestedness. *Jefferson–El v. State*, 330 Md. 99, 107, 622 A.2d 737, 741 (1993). To show the mere appearance of impartiality, the burden is only slightly lower. Appearance of impartiality is determined by "examining the record facts and the law, and then deciding whether a reasonable person knowing and understanding all the relevant facts would recuse the judge." *Id.* at 108, 622 A.2d at 742. Personal bias is bias derived from extra-judicial sources only. *Id.* at 107, 622 A.2d at 741.

In support of this allegation of bias, appellants have provided us with only an affidavit of trial counsel, submitted

below in support of the recusal motion. The vast majority of the affidavit concerns pre-trial and trial rulings by the judge, which are generally not considered to be evidence of personal bias. *Id.* In some instances the rulings are alleged to be erroneous, in some instances the judge's error was prevented only by the greater-than-normal efforts of counsel for appellant, and *in toto* the rulings are alleged to form a pattern. We perceive no such pattern as would cause a reasonable person appraised of all the facts to recuse the judge.

Only two other aspects of the affidavit warrant our comment. At one point, counsel notes that Mr. Goldman had prior dealings with the judge in a separate asbestos case, in which Mr. Goldman served as plaintiff's counsel. In that case, Mr. Goldman moved for recusal of the judge on the basis of prior dealings between the judge and that plaintiff, and the judge recused himself. To our minds, this demonstrates that the judge knows full well when recusal is appropriate. Finally, counsel calls attention to some pre-trial comments by the judge on the subject of using MLRPC Rule 1.5(e) as a defense to a breach of contract suit. The judge allegedly cautioned counsel to be very careful when considering whether to try to present such a line of defense because, if the agreements were found to be unethical, the judge said he would not hesitate to refer Mr. Goldman to the Attorney Grievance Commission. In our opinion, the judge was not expressing personal bias at all, but pointing out what the State's rules of professional ethics might require him to do should counsel's defense end up proving more than he bargained for. We will not order a recusal on remand.

### Cross-appeal

Only one issue is raised on cross-appeal. Cross-appellant CBT claims the lower court erred in amending its declaratory judgment to award GSW $90,367.69. The sum apparently represents the amount due to GSW as a result of CBT's breach of the second Local 24/Key Highway fee-sharing agreement. CBT points out that GSW never asked for this adjustment to the declaratory judgment and expressly disavowed

any interest in that money in its post-trial filings. GSW does not dispute this and asks that we grant the relief CBT requests. Nowhere does CBT claim that its right to a jury trial was violated.[5]

▮▮▮▮ Regardless of the lack of a contest at this level, we will not reverse a lower court just because the parties so desire. The only alleged ground for a reversal here is that the relief was not requested or even desired below. This is not an allegation of error. In a declaratory judgment action, it is the court's duty to declare the respective legal rights of the parties, and it need not follow that the judgment must correspond to either party's view of the case. *Woodland Beach Property Owners' Ass'n v. Worley*, 253 Md. 442, 448, 252 A.2d 827, 830 (1969); *Mayor & Town Council of New Market v. Armstrong*, 42 Md.App. 227, 233–35, 400 A.2d 425, 429–30 (1979). We see no reason why this rule should be any different when the court is acting pursuant to a motion to amend judgment, as opposed to rendering an original judgment. A trial court retains unrestricted authority over an unenrolled judgment pursuant to Md.Code Ann., Cts. & Jud. Proc. § 6–408 (1995). *Mraz v. County Comm'rs*, 291 Md. 81, 86, 433 A.2d 771, 774–75 (1981). We do not believe the circuit court would have been precluded from amending its judgment to declare more accurately the parties' legal rights, even if no motion for amendment had been made by either party. The cross-appeal is denied.[6]

---

5. Had CBT ever argued to this Court that the monetary award violated its right to a jury trial and assuming that such a claim was properly preserved below, we are aware of no reason why its claim would not have succeeded.

6. We do not affirm the monetary award against CBT for reasons that merit brief mention. Earlier in this opinion, we determined that the lower court's declaration of the continuing enforceability of the contracts must be vacated so that the lower court may consider whether to award appellant a new trial in light of *Post v. Bregman*. Regardless of whether any of the monetary awards violates any party's right to a jury trial as a substantive matter, in the procedural sense all of these awards arise from the vacated declaration. Our finding of no reversible error in the award against CBT is thus subordinate to the vacating of the

### Claims on conditional cross-appeal

 Since we have found that the monetary awards against GSW were in error, we reach cross-appellants' two conditional cross-appeals. Cross-appellants claim that the lower court erred in dismissing their claim for conversion against Mr. Goldman and GSW, and they request we reverse and remand for a new trial on all issues. At this point, cross-appellants are not entitled to any further compensatory damages on their conversion claim, because the jury has already determined the amount of damages arising from any wrongful retention of the fees under the contract. *See Walsh v. Chesapeake & Oh. Canal Co.,* 59 Md. 423 (1883) (damages for assumpsit and conversion arising from a single contract are identical and merge; where plaintiffs had recovered in assumpsit in a prior suit, no action for conversion could lie unless the prior judgment were either struck by the court or reversed on appeal). Cross-appellants could only seek punitive damages on remand, which are available in a contract-based conversion action only where "actual malice" is shown to accompany the tortious act. *Henderson v. Maryland Nat. Bank,* 278 Md. 514, 519, 366 A.2d 1, 4 (1976); *Staub v. Staub,* 37 Md.App. 141, 146, 376 A.2d 1129, 1133 (1977). Cross-appellants, however, have not directed our attention to any evidence of "actual malice" accompanying cross-appellees' refusal to render the fees due on the Local 33/Sparrows Point fee-sharing agreement, which is the only fee agreement they breached. Only two references are made to the record extract. First, we are directed to the cross-examination testimo-

---

declaratory judgment and rules out the possibility of affirming the award at this juncture. It may appear from appellant's perspective that by declining to affirm the award against CBT we have given that party the benefit of its incorrect argument that the awards may validly co-exist with the jury verdict, but in reality it is the uncommon procedural posture of the case that dictates the instant result. Of course, the monetary award against CBT will either stand or fall on remand as a direct function of whether the lower court awards appellant a new trial on the enforceability issue. If a new trial is ordered, then the predicate for the award will have disappeared, and so should the award. If no new trial is ordered, however, then we can conceive of no basis on which the lower court could alter the award against CBT.

ny of Mr. Cooper of CBT, in which Mr. Cooper refers to a letter in which one Mr. Zinman, acting as counsel for Mr. Goldman in a dispute over fees from the Local 24/Key Highway cases, threatens to punch Mr. Cooper in the nose. Although this letter was apparently admitted as plaintiffs' exhibit 31, it does not appear in the record extract. Even assuming this letter is sufficient to show actual malice on the part of Mr. Goldman, it does not pertain to the breach of the Local 33/Sparrows Point agreement. It thus does not "accompany" the allegedly tortious act. The second supposed showing of actual malice is nothing more than Mr. Goldman's denials on cross-examination of repeated questions asking whether he ever said that he wished Mr. Cooper would die. This is not evidence. As cross-appellants cannot produce any evidence of actual malice, their claim fails.[7]

Lastly, cross-appellants claim the lower court erred in denying their motion for summary judgment. The facts surrounding the motion are as follows. At the close of evidence, no motions for judgment were made. CBT and LPK argued to the jury that they were due sums of $1,830,942 and $3,861,657, respectively, as a result of GSW's breach of contract. After the jury returned its verdict, cross-appellants sent a letter to the judge asking him to "perform the ministerial task" of awarding CBT $1,830,942.07 and LPK $3,861,657.53 as damages on the breach of contract claim. Attached to the letter was a requested proposed declaratory judgment order, in which appellees requested no monetary award. This letter was opposed by GSW in a subsequent responsive letter of its own. The court entered final judgments on both the breach of contract claim and the declaratory judgment action on 31 January 1997. As has already been noted, the declaratory judgment awarded CBT $1,830,942.07 and LPK $3,861,657.53. GSW responded on 5 February 1997 by filing several motions: a motion to alter or amend the declaratory judgment only, a

---

7. We do not reach cross-appellees' other two arguments that Maryland does not recognize conversion based on a pure contractual debt and that punitive damages are not available in this case based on the jury's damages verdict.

motion to stay the enforcement of that judgment only, a motion to shorten the response time on the motion for a stay, and a motion to recuse the judge. Two days later, the recusal motion was denied and the stay was granted.

Thereafter, on 10 February 1997, cross-appellants filed a motion styled as a "Motion for Summary Judgment," in which they argued that the court should "grant summary judgment in favor of CBT and LPK as to the amount of damages. Specifically . . . this Court should award CBT damages in the amount of $1,830,942.07, and LPK damages in the amount of $3,861,657.53." Left unmentioned was which of the two existing judgments the motion concerned. On the one hand, the motion argued that the court still had jurisdiction over the matter as a result of GSW's motion to alter the declaratory judgment. On the other hand, footnote one of the motion claimed that the motion merely "sets out in formal form what was requested by letter from plaintiffs' counsel to the Court dated January 19, 1997." A copy of that letter was attached, and it clearly referred to the breach of contract claim, which had since become the subject of its own, separate judgment. The motion did not include any proposed order resolving the ambiguity.

Not only was the subject of the motion obfuscated, but its argument was bi-polar. On the one hand, the motion presented itself as a summary judgment motion. For example, its heading says it is a summary judgment motion, the text of the motion consistently refers to itself as a summary judgment motion, and the only authority it invokes is Maryland Rule 2–501 ("Summary judgment"). In their brief to this Court, cross-appellants consistently refer to the motion as one for summary judgment and upbraid cross-appellee for suggesting anything to the contrary. On the other hand, the motion reads as if it were a motion for judgment notwithstanding the verdict. We quote:

This Court should grant judgment notwithstanding the verdict and strike the jury's verdict as to compensatory damages. The issue of the quantum of damages was not a

material fact in dispute and therefore should not have been considered by the jury.

In considering this motion for summary judgment it may be appropriate for this Court to view the jury's verdict with respect to damages according to the standard applied in resolving a motion for judgment notwithstanding the verdict. Thus, the Court should address [ ] whether the evidence presented at trial was legally sufficient to justify the verdict rendered by the jury.

Four pages of argument follow, applying the standards for motions for judgment notwithstanding the verdict. Then, a quick-change is performed in the concluding paragraph:

Therefore, this Court should grant plaintiffs' motion for summary judgment because there was no material fact in dispute and plaintiffs are entitled to judgment and damages as a matter of law. Specifically, this Court should enter judgment in accordance with the jury's special verdict on all issues except with respect to the quantum of damages awarded to plaintiffs.

On 10 June 1997 the court denied the motion on the grounds that genuine disputes of material fact existed, which the jury had already resolved. The court referred to the motion as "Plaintiffs' Motion for Summary Judgment and Request to Enter Judgment Notwithstanding the Verdict."

■■■ The motion is outrageous. Cross-appellants failed to move for judgment on any issue at the close of all evidence, and therefore they were precluded from requesting a judgment notwithstanding the verdict with regard to any issue. This foreclosure of remedy by their own default is, presumably, the reason why they requested a higher level of damages in a letter to the judge rather than in any formal motion at all. We have no idea why a summary judgment motion was filed after the entry of judgment as to all issues. If it were a belated attempt to provide the predicate for a motion for judgment notwithstanding the verdict, it would be entirely illegitimate. Although we will affirm the lower court's denial of this motion for the reasons stated below, we consider the

motion in fact to be a nullity, or worse. It deliberately obfuscates the issues before the court, merging issues pertaining to two separate judgments and two separate legal standards applicable to opposite sides of the jury's deliberations. The claim fails and warrants an award of costs.

In conclusion, we have found no error in the instant breach of contract judgment, and that judgment is thereby affirmed. As for the declaratory judgment, however, the lower court violated appellant's constitutional right to a trial by a jury when it awarded relief that could not be reconciled with the jury's special verdict, and the awards against appellant must be reversed. The court also erred by precluding appellant from presenting an equitable defense based on MLRPC Rule 1.5(e) and its predecessor ethical rule without first considering the equities under the factors subsequently set forth in *Post v. Bregman*, 349 Md. 142, 707 A.2d 806 (1998). The declaratory judgment must therefore be remanded to the circuit court for further proceedings thereon.

**JUDGMENT ON BREACH OF CONTRACT CLAIMS AFFIRMED.**

**JUDGMENT GRANTING DECLARATORY RELIEF REVERSED AS TO THE MONETARY AWARDS AGAINST GOLDMAN, SKEEN & WADLER, P.A., VACATED IN ALL OTHER RESPECTS, AND REMANDED FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION.**

**COSTS TO BE PAID BY APPELLEES.**